Partridge *agt.* Menck and others.

———————

PARTRIDGE, appellant, *agt.* MENCK and others, respondents.

*Questions discussed.*

1. Whether a " *trade mark,*" which has become known, is a species of property which will be protected by the court of chancery ?

2. Whether any unauthorized use of such trade mark, which shall have the effect to take from the proprietor thereof the lawful advantage which he might derive from the same, is an infringement of the right of such proprietor, which will warrant the interference of the court ?

3. Whether it is the same in principle, whether the trade mark be used *without change*, or whether it be *imitated*, or used in part with some colorable difference, if it is still calculated to mislead the public ?

4. Whether Partridge, as purchaser from and successor of A. Golsh, had an exclusive right to the use of the imprint of the " *bee-hive,*" and the words " *A. Golsh,*" which composed the material parts of the label and designation of the " Golsh Matches ?"

5. Whether the respondents, by the similarity of their label with that of A. Golsh, were deceiving the public by selling matches manufactured by them as and for those manufactured by the appellant, and thereby injuring his business ?

The bill was filed in this cause by Partridge, the appellant, before the vice-chancellor of the first circuit, October 31, 1846, and a subpœna and injunction were thereupon issued and served upon the defendants.

The bill stated that Partridge, for a large and valuable consideration, in the month of January, 1844, purchased from A. Golsh his interest in the business of manufacturing friction matches in the city of New-York, including all the property which was in use therein, and the good will of said business, together with the right of using the name of said Golsh and his labels, and the plates for printing. That by the terms of the agreement, Golsh relinquished entirely to the appellant and his assigns his entire business and property, and covenanted not to carry on the same or a similar business in this country, and granted to the appellant the exclusive use of his label aforesaid, and of the name of said Golsh, covenanting that appellant was the only person to whom he had communicated his process aforesaid. Golsh introduced appellant to his customers as being his successor in business, and the sole manufacturer of matches, such as he had been accustomed to sell; and shortly after departed for Europe, where he then was. That afterward the business became extensive and valuable to the appellant; that the matches he manufactured were known as Golsh's matches, and sold to the same customers that formerly dealt with said Golsh, besides a great many new customers, who had been induced to purchase in consequence of the reputation of the said Golsh match in market.

That the label used by said Golsh had an imprint of a bee-hive, and the words " A. Golsh, friction matches, 124 Twelfth-street, between 5th and 6th Avenues, New-York," which label had been used by appellant since his purchase of Golsh without variation. That appellant had a label for a particular kind of match without sulphur, which had the same vignette or imprint of the bee-hive, with the words, " A Golsh, premium matches, without sulphur, 3 Cortlandt-street and Twelfth-street, New-York;" the first named place being a shop, which the said Golsh used for convenience in the retail business in the lower part of

the city, and which appellant had always used for the same purpose.

The bill then charged that the defendants had recently been offering matches for sale, with a label made in imitation of that used by appellant, and put in boxes made of paper similar in appearance and color to that used by appellant, and calculated to deceive appellant's customers, and other dealers; and to induce them to suppose that their matches were the real Golsh matches, and had sold the same to a large amount, representing them to be such; and had interfered with appellant's business, and impaired his sales to a large extent.

That the label contained the bee-hive aforesaid, which was a well known mark of the Golsh matches, and had been always used by said Golsh and appellant, and by no other person in the manufacture and sale of friction matches, and was the principal mark depended upon by many of appellant's customers. That for some time the defendant's label had the words " MENCK & BACKES, LATE CHEMISTS to A. GOLSH, FACTORY IN 8th AVE-NUE 46th-STREET; ALSO IN 8th AVENUE 163d-*street*, NEW-YORK;" recently the form had been altered, so as to read thus: "MENCK & BACKES' FRICTION MATCHES, MADE BY J. BACKES, LATE CHEMIST FOR A. GOLSH," the words "Menck & Backes, made by J. Backes, late chemist," being covered by the lid of the box so as not to be readily observed, and the name of A. Golsh being in large letters; and this was the label then used, retaining the bee-hive.

The bill then proceeds to charge the defendants with having publicly advertised their matches, and had effected large sales to persons who were under the belief, derived from such advertisement and labels, that the matches were made by the successor of said Golsh in his business.

That Menck was never acquainted with the business of making matches, nor was he a chemist, and was never employed by A. Golsh; that Backes was an ignorant German, and was not a chemist, but was in the employ of A. Golsh, and afterward by appellant, chiefly in carting matches about town—never employed to mix ingredients.

That the matches manufactured by defendants were of inferior quality, and the sale of them injured the reputation of the Golsh matches, which impaired the demand for the latter.

That appellant had many foreign customers, particularly in Spanish countries, in Cuba, Mexico, and South America, who had been entirely misled by purchasing matches of defendants, supposing them to have been the Golsh matches, whereby the business of appellant had been seriously affected. That unless defendants were restrained in their course of proceeding appellant would be greatly injured in his business, especially as defendants had little or no responsibility.

The defendants, William Menck, Jacob Backes, and Augustus A. Samanos, put in their joint and separate answer, and denied that dealers in matches depended upon the label in purchasing matches, as stated in the bill.

That A. Golsh did, as defendants were informed and believed, for a number of years after he commenced the business of manufacturing matches, use and adopt another and different label from either of those referred to in the said bill of complaint; and that he did not, in the management of his business, consider the label as of any particular importance in the reputation of the said matches, or otherwise connected with the manufacturing thereof; that the label so used by him had an imprint thereon of the British coat of arms, and the words " W. Jones' *Royal Patent* Matches, *warranted to ignite, drawing them lightly over the bottom of the box, and to keep in any* climate, *Strand,* 5, No. 291 ;" which said label was used to some extent by the said complainant.

That if said Golsh did introduce the complainant to his customers as his successor, the defendants insisted that he did not thereby give the complainant any exclusive right to the business, nor to the label which he had adopted and used as aforesaid. And denied that complainant in his purchase, or in any other way or manner, became entitled to the perpetual and exclusive right to use the aforesaid label, and vignette aforesaid. That if complainant ever had any such exclusive right, it was given for a definite period of time, which had then elapsed.

They denied that A. Golsh had not disclosed to any other person his mode of manufacture; but on the contrary, the said Jacob Backes answering upon his own knowledge, and the other defendants upon information and belief, said, that some time about one year previous to the time of the alledged sale and assignment by said A. Golsh to the complainant, said Golsh did communicate, disclose, and make known to defendant Backes the ingredients and also the mode of manufacturing the chemical composition with which the said matches were made; and that the fact that defendant Backes was acquainted with the properties and the mode of making said chemical composition was at or about the time of the purchase by the complainant known to him, and that complainant hesitated and expressed an unwillingness to close the bargain, because of such fact.

They denied that the label, "A. GOLSH, FRICTION MATCHES, 124 *Twelfth-street, between 5th & 6th Avenues, New-York*," with the imprint of a bee-hive thereon, had been used by the complainant without variation, or that it was then used by the complainant: on the contrary, they said that the complainant used in all five different kinds of labels for the matches manufactured by him, some with, and some without the vignette of the bee-hive; and also, that said A. Golsh had another label, which he used for a long time for the purpose of bringing his matches into repute, and that the complainant had not, and never had, the exclusive right to use the name of said A. Golsh, or the imprint aforesaid, so as to prevent the defendants from using the same in the way and manner hereinafter particularly mentioned, nor had the said A. Golsh any such exclusive right thereto.

The defendants, Wm. Menck and Jacob Backes, said they were partners in business, under the firm of Menck & Backes, and carried on the manufacture of matches at the corner of 46th-street and 8th Avenue, in the city of New-York, and that they also received orders at No. 163 Eighth avenue, and at other places referred to in the advertisement hereinafter mentioned; that they were daily manufacturing large quantities of matches for sale; and alleged that such matches were in every respect

Partridge *agt.* Menck and others.

superior in quality to those of complainant; that the same are, and always have been, known to customers and to the public as a different article, and as having been made by different persons, at a different place from those manufactured and sold by the complainant; that in getting up a label for the boxes in which the said matches were contained, the vignette of a bee-hive was selected by the defendant, Wm. Menck, and without any concert with the other defendants, and without particular reference to the style and device of the labels used by the complainant; that he drew the pattern from his own imagination, and without having any one of the complainant's labels before him, and without in any manner designing or intending to infringe upon the complainant's rights, not knowing or believing but that he had as good right to use the vignette of the bee-hive as if the complainant had not in any manner used the same on his labels—a bee-hive being a common and ordinary vignette upon labels, and also upon cards and signs in common use by the public; and that he had not then, nor had either of the defendants, any knowledge of any exclusive right in the complainant to such vignette or imprint of a bee-hive; that in using the name of A. Golsh in the connection in which it was used on defendant's labels, the object was to advertise the fact that defendant Backes had been chemist to the said A. Golsh, in his manufactory.

The answer denied that defendants had intentionally put up and sold matches in imitation of complainant, and then proceeds to give the particulars of the difference between the labels of each. Denied the allegations in the bill of having attempted to make sale of matches to any person who was under the belief, derived from defendant's advertisement or labels or otherwise, that they were Golsh's matches.

Jacob Backes denied the allegation in the bill that he had never been employed by A. Golsh, and afterward by the complainant, in mixing ingredients for the composition of matches, or that he had no chemical knowledge of said ingredients; on the contrary said, that for the space of about one year before A. Golsh gave up the business, defendant mixed the ingredients

and prepared the said chemical composition for use; that he was informed by said A. Golsh of what the said composition was composed, and directed how to mix the same; and that when A. Golsh sold out as aforesaid, defendant was as well acquainted with that part of the business as said A. Golsh himself was: that defendant afterward continued in the employ of the complainant for the period of about two years, and mixed and assisted in mixing and preparing the said chemical composition for said complainant. Never had been under any agreement with A. Golsh or complainant, or any other person, either express or implied, not to manufacture matches, or to avail himself of the knowledge and information he had acquired for his own benefit.

The answer in response to the bill concluded by denying specifically the inferior quality of defendants' matches; that the sale of complainant's matches was injured as alleged, or that defendants had ever attempted any infringement of complainant's rights, or that complainant's customers, or the public, had been deceived as alleged in the bill.

The following are the labels alluded to—two of complainant's, and two of defendants' :—

The bill and answer were under oath.

On the 8th Dec., 1846, on motion of the defendants, founded on the bill and answer, the vice-chancellor, Hon. LEWIS H.

SANDFORD, dissolved the injunction, and *held,* after laying down certain rules relative to trade-marks, that the defendant's label was not an unlawful invasion of the complainant's trade-mark.

The complainant's matches were sold as "*A. Golsh's ;*" the defendants' were sold as the manufacture of a "*late chemist for A. Golsh.*" And any purchaser looking for the "*A. Golsh*" matches, would see at a glance that the defendants' article was not his, but that it came from some person lately his chemist. Though the words "*late chemist for*" were smaller than the words "*A. Golsh,*" on the defendants' label, they were perfectly plain and distinct, and printed in type only a trifle smaller than the capitals used in our recent published reports.

. The use of the bee-hive left a shade of doubt in his mind, but it was not sufficient to warrant him in retaining the injunction on the case as disclosed by the answer.

From the order dissolving the injunction the complainant appealed to the chancellor, who, on the 25th January, 1847, affirmed the order of the vice-chancellor, and upon substantially the same grounds.

From the order of the chancellor the complainant appealed to the court for the correction of errors, which appeal was, by law, transferred to this court.

*Dana, Woodruff, and Leonard, Attorneys, and*
*A. H. Dana, Counsel,* for appellant.

*First.* A trade mark which has become known is a species of property which will be protected by the court of chancery.

*Second.* Any unauthorized use of such trade mark, which shall have the effect to take from the proprietor thereof the lawful advantage which he might derive from the same, is an infringement of the right of such proprietor, which will warrant the interference of the court. (*Knott* v. *Morgan,* 2 *Keen,* 213; *Millinton* v. *Fox,* 3 *Mylne & Craig,* 339; *Day* v. *Binning,* 1 *Cooper,* 489; *Croft* v. *Day,* 7 *Beavan,* 84; *Coates* v. *Holbrook,* 2 *Sandford,* 586; *Taylor* v. *Carpenter,* 3 *Story Rep.* 449.)

*Third.* It is the same thing in principle, whether the trade

mark be used without change, or whether it be imitated, or used in part with some colourable difference, if it is still calculated to mislead the public. (*See the cases above cited, and also, Sykes* v. *Sykes,* 3 *Barn. & Cress.* 541; *Seton* v. *Senate, cited in* 2 *Ves. & Bea.* 218.)

*Fourth.* Nor is it essential that such use should be with fraudulent intent; but if, in fact, the benefit which the owner of such trade mark is entitled to have, is appropriated by another, no matter with what intent, there is a just claim for relief in a court of equity. (*See* 3 *Mylne & Craig,* 339.)

*Fifth.* Complainant has such an ownership of the label set forth in the bill, the material parts of which label are the name of A. Golsh, and the vignette of the bee-hive.

*Sixth.* This label is the only designation of the Golsh matches: the composition cannot be determined by inspection, and customers must therefore depend upon the label.

*Seventh.* Defendants have used a label which, though not identical with complainants', is nevertheless an imitation calculated to deceive customers, and induce them to suppose that their matches are the manufacture of Golsh, or of his successor in business; and the use of the label is intended, and does have the effect of getting a sale for the articles manufactured by defendants, upon the reputation of A. Golsh, and not upon their own.

1. Defendants have recently commenced business, and cannot be supposed to have acquired a reputation of their own.

2. The name of A. Golsh is the most conspicuous part of the label.

3. If a customer should even examine more particularly, he will find, " J. Backes, late chemist of A. Golsh," which would make the impression still stronger that this is the genuine article.

4. The words " Menck & Backes" are covered by the lid of the box when shut.

5. The vignette of the bee-hive is a mark which would be depended upon by foreign customers, who are more accustomed to trade marks than dealers in this country.

*Eighth.* Upon all the circumstances of the case, it being apparent that the course of proceeding, on the part of defendants, must necessarily deprive the complainant, to a considerable extent, of the advantage which he was entitled to as the purchaser of Golsh's establishment, and good will in business, and that the injury is of such a nature as cannot be made the subject of exact calculation, but is likely to be ruinous to complainant: it is a case where an injunction of a court of equity is the only adequate remedy, and the order appealed from dissolving the injunction ought to be reversed.

*E. H. Owen, Attorney and Counsel* for respondents.

*First.* If the appellant is entitled to a reversal of the orders of the courts below, and to have an injunction, as prayed for in his bill, it must be either upon the ground that he has an exclusive right to the use of the imprint of the bee-hive and the words *A. Golsh,* or that he has adopted and used them as his trade marks, to distinguish his matches from those manufactured by others; and that the respondents are fraudulently using the same, (or those so nearly resembling them as not to be readily distinguishable by persons dealing in the article,) and deceiving the public by selling matches manufactured by them, as and for those manufactured by the appellant, and thereby injuring him in his business.

*Second.* The appellant has no such exclusive right. He has neither a patent for the composition of which the matches are made, nor a copyright of the imprint of the bee-hive, nor of the name of A. Golsh. The only right which he has is what he derived by purchase from Golsh, and what he has acquired by subsequent use as his trade mark. But Golsh never granted to him the right to use the imprint of the *bee-hive;* all that was granted was the mere right to use his *name* upon the labels. The appellant has not therefore any *better* right to use the imprint of the bee-hive than the respondents have.

*Third.* The allegation that the respondents have been offering matches for sale with a label made in imitation of that used

Partridge *agt.* Menck and others.

by the appellant being denied in the answer, the question of simi-
larity can only be determined by inspection, and it is therefore
insisted that the words and imprint of the bec-hive, as used by
the respondents upon their labels, are not in imitation of, nor
similar to those used by the appellant. Nor is there such a
resemblance between them as to mislead or deceive, by causing
the public to suppose that in purchasing the respondents'
matches they are purchasing those manufactured by the appel-
lant, or A. Golsh. The following, among other things, clearly
distinguish the two labels :—

1. The letters on the appellant's label are *black*, and upon
*white* ground, while those of the respondents are *white* letters
upon *black* ground.

2. The words upon the labels are entirely different. The
only word which appears on the appellant's label above the
bee-hive, when the lid is on, is *matches*, while upon the re-
spondents' there appear the words, " *late chemist to A. Golsh.*"

3. The words below the bee-hive are also different. Those
upon the appellants' being " 124 Twelfth-street, between
5 & 6 Av. New-York," while those upon the respondents' label
are, " Factory in 8th Avenue 46th st. Also 163 8th Avenue,
New-York."

4. If the lids are removed, the words thereunder are dif-
ferent. Those upon the appellant's are " *Golsh Friction,*"
while those of the respondents' are " Menck & Backes Friction
Matches, made by J. Backes."

5. The imprint of the bee-hive, even supposing the appel-
lant to have purchased the same, is different ; the appellant's
being imperfect in execution, while the other is more perfect,
and is surrounded with flowers, with a perspective.

*Fourth.* The appellant has no right to the sole use of the
bee-hive as represented on his second label. There is no suffi-
cient allegation in the bill that he had adopted and used that
prior to the time the respondents got up their label. To
entitle the appellant to bring that label in comparison with the
respondents', he should have averred the prior use thereof as
his trade mark.

*Fifth.* But even if there were such an averment, still there is no real similarity between that label and the one used by the respondents. The outward appearance of the appellant's boxes with the lid on, and that of the respondents' with the lid on, is so *dissimilar*, that it is scarcely possible for any person to be deceived. There is nothing to induce the belief in the mind of the purchaser that he is purchasing the appellant's matches, or even those made by his successor.

*Sixth.* The printing contained upon the respondents' labels speaks the truth. J. Backes had been chemist for A. Golsh; and having been such, he had a perfect right to state that fact upon his labels. The factory is not in the same street, nor is its street number the same as that of the appellant's, so that there is no similarity in that respect.

*Seventh.* The respondents have never sold their matches, nor have they ever been purchased, *as and for* Golsh matches, or *as and for* the appellant's matches, but they have always been sold and purchased as matches manufactured by Menck & Backes. The public has not therefore been in any manner deceived, nor has the appellant been deprived of any gains or profits beyond what might be expected from an honest and successful competition in the business.

*Eighth.* For these reasons it is submitted by the respondents that the order appealed from should be affirmed.

GARDINER, Judge. If the statements of the bill are analyzed, it will be found that the complainant claims the exclusive right to impose upon the public matches made by himself as those manufactured by A. Golsh.

He alleges that "the label heretofore spoken of, which was used by said Golsh, had an imprint of a bee-hive, and the words of 'A. Golsh, friction matches, 124 Twelfth-street, between 5th and 6th Avenues, New-York,' which label has been and now is used by your orator without variation." In every essential particular, as it respected the complainant, the statement of the label was false. The matches were not Golsh's matches, in the sense in which it was intended that purchasers should understand these terms. He was in Europe, and had no inter-

est or agency in their manufacture. Verbal declarations to a purchaser, of the same kind, with a view to a sale of this article, it was conceded would have been fraudulent. That they were made to assume a more permanent form, and one better calculated to impose upon those who relied upon the reputation, personal skill, and integrity of Golsh, can make no difference in the character of the transaction. It is no sufficient answer to this view of the subject that the complainant obtained from Golsh the secret of the manner in which his matches were prepared, or that he manufactured an article in all respects equal to that offered by the former proprietor. So also did the defendants, if we may trust their answer. Nor does it alter the case that the complainant purchased the right to use the name of Golsh.

The privilege of deceiving the public, even for their own benefit, is not a legitimate subject of commerce; and at all events, if the maxim that he who asks equity must come with pure hands, is not altogether obsolete, the complainant has no right to invoke the extraordinary jurisdiction of a court of chancery in favor of such a monopoly. The bill is, therefore, defective for want of equity, and for this reason as well as for those assigned by the vice-chancellor and chancellor, I think the order of the latter should be affirmed.

WRIGHT, Judge. A person having adopted and used a particular label, or trade-mark, to indicate to those who deal with him that an article is manufactured or sold by him, or by his authority, others, without his assent, have no right, with the view of deriving advantage from the same, to use such label or trade-mark, without change, or even with such colorable difference as is calculated to deceive the proprietor's customers, or the patrons of his trade or business. Such label or trade-mark, when it has become known, is a species of property; and the owner will be protected against the attempts of others to appropriate to themselves, by its use, the benefit which such owner is entitled exclusively to enjoy. But there can be no harm done to the owner, of which he has the right to complain, unless his label or trade-mark be appropriated without change, or unless it is similated in such a manner as probably to mis-

Partridge *agt.* Menck and others.

lead his customers, or the patrons of his trade or business, inducing them to suppose that in purchasing the article marked they are purchasing that manufactured or sold by such owner. In this case the appellant alleges that the respondents have been offering matches for sale with a label made in imitation of that used by him. This is denied in the answer of the respondents; but the answer admits that the labels annexed to the appellant's bill of complaint are of the kind used by the respondents. Specimens of labels, as used both by the appellant and respondents, are annexed to such bill. The question of similarity, therefore, can only be determined by inspection.

Upon inspection, I am unwilling to conclude that the label used by the respondents bears such a resemblance to that used by the appellant as to deceive the customers of the latter, or ordinary purchasers, or that a purchaser may not readily discriminate between them by ordinary attention. The only approach to similitude is in the use of the imprint of the bee-hive and of the name of "*A. Golsh;*" but even here there is a distinguishing difference. In all other respects there is no similarity. With ordinary attention no person can be deceived or misled; and consequently the appellant will not be deprived, by the use of the respondents' label, of any gains or profits beyond what might be expected from a fair and successful competition in business.

This case is peculiar in one respect. The label of the appellant is calculated to deceive the purchasers of matches; inducing all unacquainted with the agreement between him and Golsh to believe that they are purchasing an article manufactured and sold by Golsh himself, when in truth Golsh has no concern in the manufacture, or interest in the business, and has left the country.

It is unnecessary at this time to inquire whether, under such circumstances, a court of equity would be bound to protect the appellant, as the dissimilarity in the labels is a sufficient ground on which to determine the case in favor of the respondents.

The decree of the chancellor should be affirmed.

DECISION—*order affirmed, unanimously.*

NOTE.—GARDINER, J.—*Held*, that the bill was defective for want of *equity*,. because the complainant, by his own showing, claimed the exclusive right to impose upon the public matches made by himself, as those manufactured by A. Golsh.

The privilege of deceiving the public for their own benefit was not a legiti-- mate subject of commerce, and therefore it .made no difference that the com- plainant had *purchased* the right to use the name of Golsh. He must come with pure hands when asking for equity.

WRIGHT, J. *Held*, That it was then unnecessary to inquire whether, under the peculiar' circumstances of this case, a court of equity would be bound to pro- tect the appellant, as the *dissimilarity in the labels* was a sufficient ground on· which to determine the case in favor of the respondents.