HOLMES, BOOTH & HAYDENS *vs.* THE HOLMES, BOOTH & AT-
WOOD MANUFACTURING COMPANY.

Where the name of a manufacturing corporation designates the origin and own-
ership of goods manufactured by it, it will be protected in the use of its name
to the same extent and upon the same principle that individuals will be pro-
tected in the use of trade marks.

Corporations in the exercise of discretionary powers conferred by statute, must
so exercise them as not to infringe upon the established legal rights of others.

Where a corporation, with the consent of its principal stockholders, has embodied
their names in the corporate name, the right to use the name so adopted will
continue during the existence of the corporation.

A rival company, subsequently formed, and embracing such stockholders, will
have no right so to use the names of such stockholders as to mislead those
dealing with them into the belief that the two companies are the same.

The ground on which courts of equity afford relief in cases of infringement upon
the rights of property in trade marks, is the injury to the party aggrieved and
the imposition upon the public. These consequences do not necessarily depend
upon the question whether there is actually any fraud or evil intent.   The *quo
animo*, therefore, would seem to be an immaterial inquiry.

Where the probable and ordinary consequences of a man's acts will be to benefit
himself to the injury of another, his intention to produce that result may be
legitimately inferred.

A joint stock company took its name from the names of four of its principal
stockholders, thereby indicating a partnership rather than a corporation.  Sub-
sequently an act was passed requiring the names of such corporations to begin
with the word " The" and end with the word " Company";  but nothing in the
act required a change in the names of existing corporations.   The retention
of such name after the passage of the act is not such a misrepresentation as
will render it inequitable for a court of equity to protect the corporation in
the use of its name against infringement by a rival company.

After a period of more than fifteen years, the persons whose names appear in the corporate name, ceased their connection with the corporation. The retention of the name subsequently, held not to import a representation that the corporation still had the benefit of the skill and experience of the persons named.

BILL IN EQUITY for an injunction against the use of a name by the respondents, both parties being joint stock corporations ; brought to the Superior Court in New Haven County. The court found the following facts.

The petitioners were organized under the joint stock laws of this state, by the name of " Holmes, Booth & Haydens," in the year 1853, for the purpose of manufacturing and dealing in brass and other metal goods.

Israel Holmes, John C. Booth, Henry H. Hayden, and James A. Hayden, were among the original stockholders in the corporation, and the corporate title thereof was made up of their several names. Henry Hotchkiss was the only other original stockholder.

The petitioners have successfully carried on the business above named since their organization. They have a rolling mill and manufactory at Waterbury, and stores for the sale of their manufactured goods at No. 49 Chambers street, New York city, and at No. 17 Federal street, in the city of Boston, and have had traveling salesmen in all parts of the United States ; and their corporate name has acquired a valuable reputation in the public markets of the country.

On the first day of January, 1869, and at the time the suit was brought, the capital stock of the petitioners consisted of sixteen thousand shares, distributed among fifty-one stockholders ; and the petitioners then had at Waterbury a mill for the making, principally, of sheet metals, wire and tubing, and a manufactory for the making of other metallic goods, of which lamp-burners constituted a principal part. These lamp-burners were made according to certain patents of Lewis J. Atwood, and were known in the market as the " comet burner."

At the annual meeting of the corporation in January, 1868, Israel Holmes, John C. Booth, Henry H. Hayden, James A. Hayden, Gordon W. Burnham, Benjamin F. Adams, Lewis

J. Atwood, Samuel A. Chapman, and Alexander S. Chase, were chosen directors of the corporation, and so continued to be until the annual meeting in January, 1869. Israel Holmes was chosen president, and held the office until December, 1868, when he resigned. John C. Booth was chosen secretary, and held that office until April, 1868, when he resigned. Lewis J. Atwood was in the service of the corporation, as superintendent of the lamp-burner department; Benjamin F. Adams had the charge of their Boston store.

Sometime in December, 1868, after preliminary conferences for the purpose held during the two or three previous months, Israel Holmes, John C. Booth, Lewis J. Atwood, and Benjamin F. Adams, with Henry L. Coe, who was a traveling salesman for the petitioners from their New York store, George W. Welton, who was the superintendent of their rolling-mill, Burr Tucker, and David S. Plume, who was president of the Thomas Manufacturing Company, a joint stock corporation engaged in the brass and other metal manufacture at Thomaston in the town of Plymouth, definitely determined to organize a new corporation, under the joint stock laws of this state, for the purpose of carrying on the same kind of business as that carried on by the petitioners.

These conferences and this determination were confidential among these parties, and their purpose was not disclosed to the other directors or stockholders of the corporation of Holmes, Booth & Haydens, until the publication of the articles of the new corporation on the 9th of February, 1869. Pursuant to this determination the respondent corporation was organized by articles dated January, 1869, under the corporate name of " The Holmes, Booth & Atwood Manufacturing Company.'

Israel Holmes has been engaged in the manufacture of brass during the last forty-five years, and his skill in that business is widely and favorably known. John C. Booth has been engaged in the manufacture of brass during the last thirty years, and has a good business reputation.

The shares of stock in the respondent corporation were subscribed for as follows:—

| | | |
|---|---|---|
| Israel Holmes, | 800 | shares. |
| John C. Booth, | 3200 | " |
| Lewis J. Atwood, | 2000 | " |
| Benjamin F. Adams, | 800 | " |
| Henry L. Coe, | 800 | " |
| George W. Welton, | 800 | " |
| David S. Plume, | 2000 | " |
| Burr Tucker, | 1600 | " |

The corporation was located at Waterbury. All the above named stockholders were chosen directors; Israel Holmes was chosen president, and John C. Booth was secretary. All the capital stock has been paid in.

Soon after its organization the respondent corporation bought out the entire property, (taking a transfer of the capital stock,) of the Thomas Manufacturing Company, before mentioned, and has ever since had at Thomaston a mill for the making principally of sheet metal, wire and tubing, and in the summer of 1869 erected at Waterbury a factory for the manufacture of lamp-burners and other metallic goods. It established a store at No. 80, Chambers street, in New York City, and leased a store at No. 20, Federal street, in Boston, for five years from May 1st, 1870, occupying in the mean time a store in Milk street, in the last named city, and it employed traveling agents in all parts of the United States. It has carried on, and now is carrying on, the same kind of business as that carried on by the old company, and in the same markets.

By reason of the similarity of the names of the two companies confusion has resulted in their correspondence, and letters of important and confidential character, intended for one company, have, in consequence either of mistake in the address on the part of the writer, or of delivery on the part of the post office, been received and read by the other. Miscarriage of goods has also, to some extent, for the same reason occurred. And by reason of this similarity dealers in the market are likely to be confused and misled into the belief that the companies are the same.

The respondents have used and are using the name of "Holmes, Booth & Atwood," in stamping and otherwise designating some of the silver-plated ware sold by them; and this abbreviated form of the respondents' corporate name is used to a certain extent by those who transact business with them, and by the public.

The stockholders in the respondent corporation, who were stockholders in "Holmes, Booth & Haydens," held stock in the latter corporation, on the 9th day of February, 1869, as follows:

| | |
|---|---|
| Israel Holmes, | one share. |
| John C. Booth, | seventy-two shares. |
| Lewis J. Atwood, | ten shares. |
| Henry L. Coe, | eighty shares. |
| Benjamin F. Adams, | forty-eight shares. |
| Burr Tucker, | one hundred and twenty shares. |

And they had held the same amounts during the previous year, except that John C. Booth had sold fourteen hundred and eight shares since August 1st, 1868, and Lewis J. Atwood had sold one hundred and ninety shares during the month of January, 1869. Israel Holmes had ceased to be a stockholder since the winter of 1866, except to the extent of one share transferred to him to enable him to hold the office of president.

Upon these facts the case was reserved for the advice of this court.

*C. R. Ingersoll*, and *C. F. Blake* of New York, for the petitioners.

1. It is well settled that the law will protect the reputation which a man has acquired in the manufacture and sale of goods. Any name, symbol, figure, letter, form or device which a manufacturer or merchant adopts to distinguish his goods from those manufactured by others, is recognized by the law as his trade mark, to which he is entitled as he is to his other property. In protecting trade marks the law looks also to the interests of the public, and seeks to guard them from being misled into the purchase of goods other than they

had intended to purchase.    *Singleton* v. *Bolton*, 3 Doug., 293;
*Crawshaw* v. *Thompson*, 4 Man. & Grang., 386; *Bradley* v.
*Norton*, 33 Conn., 157; *Boardman* v. *Meriden Britannia Co.*,
35 Conn., 402; Upton on Trade Marks, 102.

2.   The ordinary cases· of trade marks are where the de-
fendant has imitated, either the name given by the plaintiff
to his *wares*, or the label, ticket or mark by which he has
designated them.    Thus in *Edelsten* v. *Edelsten*, 1 DeGex, M.
& G., 185, (*S. C.*, 27 Jur., 479,) the trade mark patented
was a crown and anchor.    In *Rodgers* v. *Nowill*, 5 Man.
Grang. & Scott, 109, the trade mark was "V. R., J. RODGERS
& SONS."    In *Gout* v. *Aleploglu*, 7 Am. Jurist., 27, (6 Beav.
69,) the court enjoined the use of the word Pessendede.    In
*Seixo* v. *Provezende*, Law Reps., 1 Cha. App., 192, the word
"Seixo" was protected. In *Braham* v. *Bustard*, 9 Law Times,
N. S., 199, the word "Excelsior" was protected.

3.    Another large class of cases is where the court has
protected the name under which the plaintiff's business is
carried on.    For instance, the court enjoined a band of sing-
ers from calling themselves "Christy's Minstrels;" *Christy* v.
*Murphy*, 12 How. Pr. R., 77.    The name of the *Irving House*,
an hotel, was protected.    *Howard* v. *Henriques.*, 3 Sandf.
Sup. Ct. R., 725. See *Stern* v. *Cartan*, 13 Law Reporter, 360;
*Howe* v. *Searing*, 19 How. Pr. R., 14.    In *Knott* v. *Morgan*,
2 Keen, 213, the court enjoined the defendants from calling
themselves the "*Conveyance Co*," as infringing the trade
name "*London Conveyance Co.*"    In *Clement* v. *Maddick*, 23
Jur., 592, (22 Law Rep., 428,) the plaintiff published a
weekly paper called "*Bell's Life in London*;" the defendant
called his paper the "*Penny Bell's Life*," and the court en-
joined the use of the words "*Bell's Life.*"    See also *Prowett*
v. *Mortimer*, 19 Law Reporter, 222.    The latest case is that
of *Lee* v. *Haley*, Law Reps., 5 Cha. App., 161, where the
*Guinea Coal Co.* obtained an injunction against the use by
the defendants of the name of the "*Pall Mall Guinea Coal
Co.*"    In this case the place of business of the plaintiff's
company had been in Pall Mall.

4. This principle of protecting a name under which a busi-

ness is carried on, has been carried so far that an injunction has been granted restraining the defendants from using their own names in such way as to mislead the public. In *Croft* v. *Day*, 7 Beav., 84, the plaintiffs' firm name was *Day & Martin*; and the defendants, Martin, a nephew of the plaintiff Martin, and another Day, called themselves *Day & Martin*, and embarked in the same business as the plaintiff, in the same street, the Strand, but at a different number from the place of the plaintiffs. An injunction was granted. See *Sykes* v. *Sykes*, 3 Barn. & Cress., 541 ; *Rodgers* v. *Nowill*, 5 Man. Grang. & Scott, 110 ; *Dent* v. *Turpin*, 25 Jurist, 674. Even in a partnership, the firm name, or a trade mark representing the firm name, cannot be taken by a retiring partner. *Hall* v. *Barrows*, 27 Jur., 468 ; *S. C.*, 28 Jur., 65 ; *Burry* v. *Bedford*, 27 Jur., 956 ; *S. C.*, 28 Jur., 502 ; *Charlton* v. *Douglass*, 5 Jur. N. S., 956 ; *S. C.*, 22 Law Reporter, 172 ; *Lewis* v. *Langdon*, 7 Sim., 421.

5. The case before us differs from those under the last head, in this, that the defendants here, while they confessedly use two-thirds of our corporate name, cannot claim that it is in any way their own. Persons dealing with Holmes, Booth & Atwood, do not deal with or expect to deal with Mr. Holmes or Mr. Booth ; but with an artificial person, in which those gentlemen or any others may have an interest to-day and none to-morrow.

6. It is not necessary, in order to obtain an injunction, that the name should be exactly copied. It is sufficient if the resemblance be such as may deceive the unwary. The law is well stated in *Seixo* v. *Provezende*, supra : " What degree of resemblance is necessary, from the nature of things, is a matter incapable of definition *a priori*. All that a court of justice can do is to say that no trade can adopt a trade mark so resembling that of a rival that ordinary purchasers purchasing with ordinary caution are likely to be misled. It would be a mistake to suppose that the resemblance must be such as would deceive persons who should see the two marks placed side by side. The rule, so restricted, would be of no practical use." And see *Walton* v. *Crowley*, 3 Blatchf., 440.

7. It is not necessary that we should show any evil intent or direct malice in the defendants. *Millington* v. *Fox*, 3 Mylne & Craig, 338 ; *Cartier* v. *Carlisle*, 31 Beav., 292 ; *Davis* v. *Kendall*, 2 R. Isl., 566 ; Upton on Trade Marks, 204 ; *Filly* v. *Fassett*, 17 Am. Law Reg., 402 ; 1 Story Eq. Jur., §§ 186–189 ; *Story* v. *Norwich & Worcester R. R. Co.*, 24 Conn., 94 ; *Callender* v. *Colegrove*, 17 Conn., 1 ; *Lavette* v. *Sage*, 29 Conn., 577. The court has found that certain mischiefs have resulted to the plaintiffs from the conduct of the defendants, and they will assume that these results were intended.

*J. S. Beach* and *H. B. Harrison*, for the respondents.

*First.* The questions arising upon this record, though novel and important, are few and. simple. We may better appreciate how narrow the real issue is, by first considering and excluding what is not in issue.

1. The question is not whether Richard Roe and John Doe, commencing business with or without associates, either under a general partnership, or a special partnership, or under the joint stock act, have, as against the corporation of Holmes, Booth & Haydens, the right to adopt the individual names of Israel Holmes, or of John C. Booth, or of either of them, as any part of their partnership or corporate title. We concede that if a trading firm or corporation has selected for its title any words in which, when so selected and used, they can acquire exclusive property as applied to their business, and another trading firm or corporation selects those same words as the name or title under which they propose to engage in the same business, the inference is irresistible that they are seeking to appropriate what does not belong to them ; or if the coincidence is accidental, yet they are in fact appropriating what does not belong to them, and a court of equity properly interferes to protect the exclusive rights of the injured party. We have therefore no controversy with the plaintiffs upon the proposition of law as embraced in, or as to its application as illustrated by, the cases they cite, such as *Clement* v. *Maddick*, 23 Jurist, 592, *Howard* v. *Henriques*, 3 Sandf. Sup. Ct., 726, *Davis* v. *Kendall*, 2 R. Isl., 566, *Lee* v. *Haley*,

Law Reps., 5 Ch. App., 161, and others of the same class. We are at issue with them upon the question whether the plaintiff corporation did in fact, or could in law or equity, acquire in the words they selected, as part of their corporate title, such exclusive rights as to prevent their future use by any person or firm or corporation in connection with the manufacture of brass.

2.   The question is not whether Israel Holmes and John C. Booth, and those associating with them for business purposes, either under a general or limited partnership, or under the joint stock act, may fraudulently or under the cover of a technical and legal right, use those names as part of their partnership or corporate title for the purpose of appropriating a value which is in fact extrinsic of those names and belongs to another trading firm or corporation.   If *this* was the question, then another class of authorities cited by the plaintiff would be applicable.   They cite Upton on Trade Marks, 102, to the proposition, that " the simplest case of a trade mark, fulfilling the condition of the law and thereby enabling him who adopts it to protection in its exclusive use, is the name and address of the manufacturer."  .The qualification contained in the words, " *and address*," is important, for no man can acquire such exclusive rights even in his own name, isolated from any locality, or from some distinguishing sign or symbol, as to enable him to prevent another legitimate owner of the same name from entering into fair and open competition with him.   No court has ever yet held that because one man doing business under his birth-right name, is annoyed or injured by another person of the same or similar name, conducting a competing business under *his* birth-right name, the former could enjoin the latter against a continuance of his business.  *Burgess* v. *Burgess*, 17 Eng. Law & Eq., 257 ;  *Faber* v. *Faber*, 49 Barb., 357 ;  *Comstock* v. *White*, 10 Abbott Pr. R., 264, *note* ;  *Croft* v. *Day*, 7 Beav., 90.

*Second.*   The real issue is this :—

Is it unlawful for Israel Holmes and John C. Booth, and their associates, uniting their capital for conducting the business of manufacturing brass, under the joint stock laws of

this state, to avail themselves of the inherent value belonging to those names in connection with that business, by making such use thereof in their corporate title as is reasonably requisite to inform the trading community that the skill of Israel Holmes, and the reputation of John C. Booth, are involved in and a part of the business they are conducting? The plaintiffs insist that it is unlawful, because, " by reason of the similarity of the names of the two companies confusion has resulted in their correspondence, and letters of important and confidential character, intended for one company, have in consequence either of mistake in the address on the part of the writer, or of delivery on the part of the post office, been received and read by the other; miscarriage of goods has also to some extent for the same reason occurred, and by reason of this similarity dealers in the market are likely to be confused and misled into the belief that the two companies are the same." In reply to this claim, we say,

1. That whatever similarity exists, originates in the use of the names of Holmes and of Booth. There is no pretense of similarity between the remaining single word of the plaintiffs' corporate title, and the remaining four words of the defendants' corporate title. Obviously, therefore, the defendants' corporate title was not assumed for *the purpose* of adopting a name similar to the plaintiffs' corporate title. The similarity is the necessary incident of the use of those names, and the plaintiffs admit that such dissimilarity as they ask for can be ensured only by expunging those names from the defendants' corporate title. Again, therefore, it is obvious that if the defendant corporation have the right to use these names in any way or form, as part of their corporate title, the use they now make of them is reasonable and proper for the legitimate purpose of informing the trading community that the skill and reputation of Messrs. Holmes and Booth are involved in the business they are organized to conduct.

2. A trading corporation, by assuming as part of its corporate title the name of an individual who has a valuable reputation in that branch of business which it is organized to conduct, does not so absorb the right of that individual to the

future use of his name as to acquire the power thereafter to debar him from deriving any benefit from his business reputation through the use of that name in any commercial enterprise with which · he may become connected.   If " Holmes, Booth and Haydens" had been, as their title *primâ facie* indicates, a commercial copartnership, the right of Holmes and Booth upon their retirement from that firm, to carry on a similar business in their own name, or to authorize the use of their names in any commercial enterprise with which they might become connected, could not be disputed, whether such new enterprise assumed the form of a copartnership or of a corporation.   And if the members of " The Holmes, Booth & Atwood Manufacturing Company" had organized in the form of a commercial copartnership, instead of in the form of a joint stock corporation, it must also be conceded that their legal and equitable right to conduct their business under that style and name would be beyond controversy, even though the plaintiffs thereby sustained all the grievances alleged in their bill.   Again, if both these companies had been organized in the form of commercial partnerships instead of in the form of joint stock corporations, it would be the undoubted right of Messrs. Holmes and Booth, or those with whom they had formed their new association, to enjoin their former copartners against holding out to the world that they retain the advantages incident to the continued use of those names as part of their trading title.

3.   But the plaintiffs insist that the individual rights of Holmes and Booth are not involved in this controversy; that the contest is between two corporations, having no rights except those conferred by the law of their organization; and therefore they claim that whatever may be the individual rights of Holmes and Booth, this artificial entity (the defendant corporation) has no more right to take any part of their name, under which to transact business, than has Richard Roe or John Doe.   If the controversy involved any legal right of either corporation derived from the power which created it, as to maintain suits in its own name irrespective of any legal disability of its individual stockholders, this

claim would have great force. But the controversy in this case has no reference to any rights which either corporation derived from the law of its organization. It originates in the attempt of the plaintiff corporation to grasp and hold that which the creative power never gave them. Under the authority to take *any name*, they appropriated a name over which the law of their creation did not and could not give them exclusive control. Others continued to hold property in those names. That property is of value. Neither corporation can make out an exclusive legal right to it, and it is as to their respective equitable rights to its use, and especially as to the equitable right of the plaintiff corporation to its exclusive use as against the defendant corporation, that we are in controversy.

4. The equitable rights of these two trading associations are not so obliterated by the mere *form* in which they have respectively associated, as to compel the association with which Messrs. Holmes and Booth are in fact connected, to conceal that truth, to the single end that the other association may enjoy the exclusive right of proclaiming the falsehood that it retains the benefit of their skill and reputation. The technical rules of law which in former times were applied to trading corporations as an individuality, distinct and apart from its individual members, have yielded to the pressure of the frequent inequity of such application. In the language of Chief Justice Hinman, "joint stock corporations in modern times are nothing but commercial partnerships, which have taken the form of corporations for the greater facility of transacting business, and to prevent the dissolution of the concern by those numerous events which are so liable to work a dissolution in a partnership composed of a great number of individuals." *Pratt* v. *Pratt, Read & Co.*, 33 Conn., 452. See also *Wood* v. *Hartford Fire Ins. Co.*, 13 Conn., 211; *Sears* v. *Hotchkiss*, 25 Conn., 178; *Marshall* v. *Baltimore & Ohio R. R. Co.*, 16 Howard, 327.

5. When the commercial partnership of " Holmes, Booth & Haydens," assuming for the greater facility of transacting business the form of a joint stock corporation, took their

present title, they chose it for the same legitimate purpose that the defendant corporation chose their title, to indicate that their business had the benefit of the skill and experience of Mr. Holmes and of Mr. Booth. When trading corporations elect such names for such purposes, they take them subject to the individual rights of those to whom the names belong. It is a legitimate exercise of that right for those individuals to become members of another commercial partnership, assuming for like reasons the same form of a joint stock corporation, and to confer upon it for the mutual advantage of its members authority to make such reasonable use of their individual names as will indicate that their skill and experience are now in the service of the new company. The old company by reason of its corporate organization retains the legal right to the use of its corporate title, but it is a bare legal right, and it has no more equitable claim to prevent the new company from using their corporate title, because its business may be thereby prejudiced, than it would have for the same reason to enjoin the owner of land adjacent to theirs from making a reasonable use of it. The maxim, " *Sic utere tuo ut alienum non laedas,*" in its proper application to both cases, does not mean that if injury results from a proper and reasonable use of one's own he is forbidden to use it. The adjacent owner may not erect a nuisance upon the land ; but he may build a house upon it, and excavate for his foundation wall close up to the dividing line, even though he thereby endangers his neighbor's wall. So if the plaintiff corporation have built the superstructure of its business so near the dividing line of ownership of the good will inherent in these individual names, that it is in any degree annoyed by those individuals making a reasonable use of that which confessedly they own, it is no more entitled to seek its remedy by annihilating its competitor, than it would be to protect a weakened wall by a perpetual injunction against the fee simple owner of real estate making any use of his land.

*Third.* The plaintiffs' name involves a false representation, operating as a fraud upon the public. Equity will not, in any event, intervene to protect such name. *Pidding* v. *Howe*, 8

Sim., 477 ; *Perry* v. *Truefit*, 6 Beav., 66 ; *Leather Cloth Co.* v. *Am. Leather Cloth Co.*, 1 Hem. & Mil., 271 ; *Lee* v. *Haley*, Law Reps., 5 Cha. App., 155 ; *Palmer* v. *Harris*, 5 Am. Law Rev., (Oct. 1870,) 108.

CARPENTER, J.   In 1853 the plaintiff corporation was organized under the joint stock laws of this state, taking the name of four of its principal corporators or promoters.   Two of these, Israel Holmes and John C. Booth, whose names appear in the corporate title, by long experience had acquired considerable skill and reputation in the manufacture of brass, the business for which the corporation was organized.   Thus organized, the corporation established and carried on a successful business, and their corporate name acquired a valuable reputation in the public markets of the country.   There were but five original stockholders.   The amount of the capital stock, and the number of shares owned by each, do not appear ; but at the time of the organization of the defendant corporation, February 9th, 1869, the stock consisted of sixteen thousand shares, distributed among fifty-one stockholders.   Six of the eight corporators in the new corporation were stockholders in the old, and four of them were directors, one of whom was president until a short time before.   The respondents organized under the corporate title of " The Holmes, Booth & Atwood Manufacturing Company," for the purpose of carrying on, and carried on, the same business as that done by the petitioners.

Their place of business was in the same town, and their depots in New York and Boston were in the same streets. The similarity of the names of the two companies resulted in confusion of their correspondence, mistakes in the delivery of orders, goods, &c., and it is expressly found that, " by reason of this similarity, dealers in the market are likely to be confused and misled into the belief that the companies are the same."   Other facts of less importance appear, but the above embraces all the material facts in the case.

Upon these facts the petitioners pray that the respondents may be restrained from the use of their corporate name, also

from using the words "Holmes, Booth," or the words "Holmes" or "Booth," in the name, title, or style of the corporation, or any words or titles so expressed as to be in any degree an imitation of the corporate name of the petitioners.

The petitioners insist that if the respondents are permitted to continue their business as heretofore, their goods will be sold in market as the goods of the petitioners. This claim is not seriously controverted, and we think it is a fair inference from the facts found. That any name, symbol or device, adopted by an individual, corporation or business firm, for the purpose of designating the origin and ownership of goods manufactured by them, will be protected as a trade-mark is well settled law. The name of a corporation or partnership, accomplishing the same object, will be protected upon the same principle. This is not disputed. Indeed the respondents seem to admit that the petitioners are entitled to the relief sought, unless they can protect themselves in the use of their corporate name on one of three several grounds.

1. That the petitioners, having taken their name from some of their principal stockholders, could acquire no exclusive right to the use of that name as against another corporation, subsequently formed, embracing those same stockholders.

2. That there is no actual fraud found, and no purpose or intention on the part of the respondents to use their name to the prejudice of the petitioners.

3. That the petitioners' name is itself a misrepresentation, and calculated to deceive the trade.

The case will be considered with reference to these objections.

1. In respect to the names.

The argument of the respondents' counsel upon this point proves too much. If sound it would establish the proposition that if the Haydens, or one of them, had united in forming the respondent corporation, they might have taken the petitioners' name *verbatim*, and the petitioners would have had no legal ground of complaint. Indeed this result is necessarily involved in the statement of the proposition.

Such a claim, in terms, certainly would not be seriously made. There can be no distinction in principle between taking the entire name and so much of it as will mislead dealers into the belief that the two corporations are the same. The mischief in both cases is of precisely the same character, differing only in degree.

It will be well to observe that the controversy in this case is between two corporations. Each party owes its existence to the law. The law authorizes, sanctions, and protects every act done, and every step taken, in pursuance of law, either in the process of organization, or in the course of its business. It is true all the details are not prescribed in advance. Certain general powers are conferred, which are applicable alike to all corporations ; such as the power to hold property, to sue and be sued, and the like. So also of certain requisites and forms, such as the par value of each share of stock, the publication of notice, and recording the articles of association, &c. Other powers and privileges are left in a measure to the discretion of the parties interested. Among these are the amount of capital stock, the location, the business to be transacted, and the name. When the corporators have once exercised their power in respect to these matters, the law declares the capital stock, the location, the business, and the name, to be as thus determined, until changed in pursuance of law. In respect to these matters the corporation is as much the creature of, and subject to, and protected by, the law, as in the former.

The law having authorized the selection of a name, and having declared the name so selected to be the name of the corporation, we see no reason why the law should not protect the corporation in the use of that name, upon the same principle, and to the same extent, that individuals are protected in the use of trade-marks. Hence it necessarily follows that corporations in the exercise of discretionary powers conferred by the statute, must so exercise them as not to infringe upon the established legal rights of others.

But it is contended, conceding that if John Doe and Richard Roe had formed the defendant corporation they would

have had no right to use the petitioners' name, that the peti-
tioners, by incorporating into their name the names of some
of the principal corporators, have forfeited their right to this
protection, for the reason that they could not thereby so absorb
the names of Israel Holmes and John C. Booth as to prevent
them from imparting the right to use their names to any
other corporation or business firm with which they might be-
come connected.    We state the claim in this form because,
as it seems to us, in this form only has it any application to
the present case.    We do not wish to be understood as de-
ciding that the respondents may not, in any legitimate way,
indicate to the trade that their business had the benefit of the
experience, skill and reputation of these gentlemen.    But the
simple question is, have they a right to do it by a substantial
use of the petitioners' name ?   In answering this question
we shall answer that Mr. Holmes and Mr. Booth, in the
first instance, had a perfect right to prohibit the use of their
names by the petitioners.    If so, presumptively at least,
they assented to such use.    They subscribed to the capital
stock with the knowledge, if not upon the condition, that the
corporation would thus hold out to the world that their skill
and experience were involved in the enterprise.    The same
consideration may have influenced others to subscribe to the
stock originally or to purchase stock subsequently.    The
value of the stock may have depended upon it.    There is in-
volved in the case, therefore, the element of a contract or an
estoppel.    If these parties allowed the use of their names,
thereby receiving, as they might have done, and probably did,
a consideration in the enhanced value of their stock, why
does not the law imply an agreement that the name shall
continue so long as the corporation shall exist ?    Or, if they,
in connection with others, held out to the world, by the use
of their names, that the corporation was entitled to the ben-
efit of their skill and experience, what moral, equitable, or
legal right have they now to withdraw, or otherwise impair,
the right to the use of their names ?  .
     Much of the argument in behalf of the respondents is based
upon the analogies between partnerships and corporations.

Holmes, Booth & Haydens v. Holmes, Booth & Atwood Manf. Co.

We concede the existence of the analogies, but deny that they strengthen the respondents' position.

The principle we have been contending for should, under similar circumstances, be applied to partnerships and corporations alike. It is only when the circumstances change that the principle becomes inapplicable. A person whose name appears in the firm name of a partnership, in the absence of anything raising a contrary presumption, will be presumed to have agreed that it should so continue during the existence of the partnership. If, before the partnership expires, he merely sells his interest in the concern to a stranger, he conveys to the purchaser a right in the use of his name during the remainder of the term. If at the expiration of the term he sells his interest, with an agreement, express or implied, that the business shall thereafter be continued under the same name, the same rule applies. At the dissolution of the partnership, the partners revert back to their individual rights and responsibilities, and each partner, in the absence of any agreement to the contrary, has an absolute right to control the use of his own name. In all these respects there is no difference between a corporation and a partnership.

But the difficulty with the argument is, that the plaintiff corporation still exists, and the rights which others have acquired in the use of its corporate name are still outstanding. Until its dissolution therefore, Holmes and Booth must use their own names subject to the rights of the petitioners, unless relieved of that inconvenience by their consent.

2. Fraud.

It is said that the finding in this case failed to substantiate the allegation of fraud in the petition, and an intent on the part of the respondents, by simulating the petitioners' name, to draw away their customers. There are cases which seem to establish the proposition that neither fraud nor an actual intention to do the injury complained of is essential to the petitioners' case. *Millington* v. *Fox*, 3 Mylne & Craig, 338; *Cartier* v. *Carlisle*, 31 Beavan, 203; *Davis* v. *Kendall*, 2 R. Isl., 566.

The ground on which courts of equity afford relief in this

class of cases, is the injury to the party aggrieved, and the imposition upon the public by causing them to believe that the goods of one man or firm are the production of another. The existence of these consequences does not necessarily depend upon the question whether fraud or an evil intent does or does not exist. The *quo animo*, therefore, would seem to be an immaterial enquiry.

Perhaps however it is inexpedient to declare the broad proposition deducible from those cases as the law of this state. Every man, acting intelligently, will be presumed to intend the necessary consequences of his acts. *Charton* v. *Douglass*, 23 Jurist, 887; *S. C.*, Johnson's Rep., (Eng.,) 174; *S. C.*, 22 Law Reporter, 172. The same presumption applies, with less force perhaps, to the probable and ordinary consequences. The application of this rule to the present case can do no injustice. Most of the respondents' corporators were officers, stockholders and employees of the plaintiff corporation. One after another resigned his office or position, and sold out his stock, and secretly organized and put in operation a rival company, which bought the entire property of a similar corporation in a neighboring town, and located themselves permanently in the same town with the petitioners, established their depots for the sale of their goods in New York and Boston as near as practicable to the depots of the petitioners, and assumed a name so nearly like that of the petitioners as to induce the belief that the two companies were the same. From these facts the intention to benefit themselves at the expense of injuring the petitioners, so far as such intention is essential, may be legitimately inferred.

3. Fraud or misrepresentation of the petitioners.

This objection is twofold. 1. That the petitioners' name imports a partnership, rather than a corporation. 2. That it is equivalent to a representation that they have the benefit of the skill and experience of Holmes and Booth.

With regard to the first, we cannot conceive that it makes much difference to the public, who deal with them, or purchase their wares, whether the petitioners are a corporation or a partnership. The name they selected was in strict con-

formity to the law as it existed at the time. And we see nothing in the subsequent statute, requiring the name of joint stock corporations to commence with the word " The," and end with the word " Company," that makes the retention of that name illegal or improper. Strictly speaking it is not a misrepresentation at all; but if in any sense it may be regarded in that light, it is not a misrepresentation that affects trade or business in such a manner as to render it inequitable for a court of equity to grant the relief sought. So too in regard to the second branch of the objection. We do not consider that the corporate name imports a declaration that the individuals, whose names appear therein, will always remain in the employment of the corporation. Perpetuity is a prominent feature of corporations. Ordinarily, they are organized, not for a lifetime merely, but for generations and perhaps centuries. It cannot be expected, therefore, that any one individual will remain in the employment of a corporation during the term of its possible continuance. On the other hand, it was doubtless true that the petitioners' name was originally adopted for the purpose claimed. It probably served to introduce their wares into the markets of the world, and enabled them to establish a profitable and paying business. But every one must understand that the connection of these men with the corporation, in any capacity whatever, was temporary in its nature, and subject to the ordinary changes and vicissitudes of human life. Their interest in the corporation might at any time cease. They might decline further employment, and sickness or death might incapacitate them for further service. These are contingencies which must have been contemplated.

For these reasons we advise the Superior Court to grant the prayer of the petitioners.

In this opinion the other judges concurred; except SEYMOUR, J., who having been counsel in the case when at the bar, did not sit.