HORTON MANUF'G Co., Jamestown, N. Y., *v.* HORTON MANUF'G Co., Ft. Wayne, Ind.

*(Circuit Court, D. Indiana.  December 29, 1883.)*

1. INDIVIDUAL NAME—USE BY PARTNERSHIP—DISSOLUTION.
    A partnership which is suffered by any one to use his name as a part of the firm style and title, though it may acquire by such license an exclusive right to the use of the name so long as the partnership continues intact, cannot, upon its dissolution, confer the same privilege upon its successor.

2. LACHES—ACQUIESCENCE—NOTICE.
    Acquiescence by any person in the wrongful use of his name will not estop him from asserting his rights in equity, unless he has notice during such acquiescence of the facts rendering the use of his name wrongful.

*J. K. Hallock* and *C. P. Jacobs*, for complainant.
*Ninde & Ellison*, for defendant.

WOODS, J. Bill in equity for an injunction against the use of a name by the respondent, and a cross-bill by the respondent for an injunction against the use of the same name by the complainant,

both the parties being incorporated under the name, The Horton Manufacturing Company. The material facts are as follows:

Sometime prior to 1873, Dr. Theodore Horton was engaged at Bluffton, Indiana, in the manufacture and sale of corn-planters, under letters patent of which he owned a half-interest only. This corn-planter was advertised and sold, and became known, as the "American Hoosier Hand Corn-planter." William K. Vandegriff, having purchased the other one-half interest in the patent, entered into partnership with Dr. Horton and one Rachel V. Blackstone under the firm name of T. Horton & Co., and by the terms of their partnership articles undertook to prosecute the business aforesaid for the period of twelve years from October, 1873, the date of the articles. In the conduct of the business Mrs. Blackstone was represented by her husband, William A., who was made the book-keeper of the concern.

Soon after the organization of the company, it purchased a patent for a washing-machine, which it proceeded to manufacture and sell, in considerable quantities, under the name, "Improved Western Washing-machine." In December, 1879, Dr. Horton sold his interest in this business to Vandegriff and W. A. Blackstone, but reserved his half-interest in the letters patent upon the corn-planter and one-third interest in the patent for the washing-machine; his vendees agreeing to pay him a royalty upon such articles as they should manufacture under either patent, and at the same time taking of Horton a lease for one year of the building in which the business had been theretofore conducted, with the intention of continuing the business in the same place. Mrs. Blackstone also retired from the firm at this time, leaving her husband and Vandegriff to constitute the new firm, for the continuance of which no definite time was agreed upon.

There is conflict in the evidence upon the questions whether or not certain *patterns* were included in the sale by Horton to Vandegriff and Blackstone, and whether or not Horton agreed not to engage again in the same line of manufacture. The *preponderance* of the evidence seems to be that he did so agree, but upon the understanding, implied but not *expressed*, that his successors should continue to carry on the business at Bluffton. It was distinctly understood between the parties that Vandegriff and Blackstone should continue the business. The sale and transfer of Horton's interest having been completed, he consented, without consideration, that the new firm should adopt the name, The Horton Manufacturing Company. It did accordingly take this name, and under it prosecute the business at Bluffton, until June, 1880, when the members of the firm concluded to remove, and did remove, to Jamestown, N. Y. Preliminary to this removal the company resold to Horton the engine, boiler, shafting, and some other articles used in the business, and settled with him for the rent of the building and for royalties then due. At Jamestown, the company, under the same name, carried on the same business until March 12, 1881, when its members, said Vandegriff and Blackstone, united with T. J. and J. J. Vandegriff in organizing an incorporated company, the complainant, which company has since that time prosecuted the business upon a large scale.

A few months after the removal of the company aforesaid to Jamestown, Dr. Horton, in association with two others, under the firm name of T. Horton & Co., resumed the business at Bluffton, and published a circular to the effect that he had no connection with the company at Jamestown, and that that company was without a Horton and was sailing under false colors.

That company put forth a counter circular, claiming to be the lawful successor of the original T. Horton & Co. The new firm of T. Horton & Co. continued in business until June, 1883, when it was placed in the hands of a

receiver, and Dr. Horton associated himself with others in the organization of the respondent corporation, which, under the same name as the complainant, is engaged in and proposes to prosecute the same business as the complainant, and has put forth circulars, cuts, and advertisements which will tend to confuse the public in respect to the manufactures of the two companies.

The goods manufactured by the parties, and by the companies which preceded them, have always been advertised and sold and known to the trade by the names aforesaid, which were stenciled or painted upon the respective articles, and in addition there was on each article the phrase "manufactured by," followed by the name and place of business of the company which put it upon the market; and in the case of the complainant and its predecessor the goods were marked, besides the name of the particular article, as "Manufactured by the Horton Manufacturing Company, Jamestown, N. Y.: Successors to T. Horton & Co."

The respondent has an express grant from Dr. Horton of his good-will, letters patent, and of the right to use his name. It does not appear that the Horton Manufacturing Company, as a firm or by act of its individual members, made any formal attempt to confer upon the complainant its name or good-will, or the right to use Horton's name, and if that right exists it is by force of the facts stated, and not by express grant.

For the general principles by which, upon these facts, the rights of the parties must be determined, counsel on either side have cited the opinion in *Holmes* v. *Holmes, etc., Manuf'g Co.* 37 Conn. 278. Stated generally, the decision announced in that case is to the effect that incorporators of a business company, who had permitted the use of their individual names in the composition of the corporate name, could not, after the business of the company had become established and its manufactures well known under that name, confer upon a new and rival company or corporation the right to use their individual names in a similar way, to the confusion of the public and consequent detriment of the first company; and this, upon the ground that in the use of a name lawfully acquired, which designates the origin and ownership of its goods, a manufacturing company or corporation will be protected "upon the same principle and to the same extent that individuals are protected in the use of trade-marks." The following extract from this opinion illustrates well the views of the court, and will be found to bear somewhat directly on the case now presented:

"The principles we have been contending for should, under similar circumstances, be applied to partnerships and corporations alike. It is only when the circumstances change that the principle becomes inapplicable. A person whose name appears in the firm name of a partnership, in the absence of anything raising a contrary presumption, will be presumed to have agreed that it should so continue during the existence of the partnership. If, before the partnership expires, he merely sells his interest in the concern to a stranger, he conveys to the purchaser a right in the use of the name during the remainder of the term. If, at the expiration of the term, he sells his interest, with an agreement, express or implied, that the business shall thereafter be continued under the same name, the same rule applies. At the dissolution of the partnership, the partners *revert* back to their individual rights and responsibilities, and each partner, in the absence of any agreement to the con-

trary, has an absolute right to control the use of his own name. In all these respects there is no difference between a corporation and a partnership."

In respect to the case presented: If it can be said that the old firm of T. Horton & Co. was not dissolved in 1879, upon the going out of Horton and Mrs. Blackstone, and that Vandegriff and Blackstone took it up as a going concern, then, in the absence of a contrary understanding, they perhaps had a right to go on under the old name. But as, in that case, Horton would have continued liable to the public as a member of the firm, notwithstanding his withdrawal, the more reasonable application of the rule would seem to be that the use of his name could not have been continued without his authority and so the parties themselves seem to have understood. Instead of going on under the old name of T. Horton & Co., to which they do not appear to have supposed they had any right, Vandegriff and Blackstone, with the consent of Horton, determined to adopt, as the style of their firm, the name of "The Horton Manufacturing Company." This consent, having been given without consideration, was probably a mere license, *revocable* at pleasure. *McGowan Bros.' Case*, 2 Cin. Rep. 313. And if there was in it an element of contract which made it irrevocable, it was a grant to the new firm as then composed, and, by force of the language quoted from the Connecticut decision, as well as upon sound reason, was capable of continuing only so long as that partnership should last, and therefore not transferable, either directly or indirectly, to any other person, firm, or organization, without Horton's consent.

There is certainly no authority, in any case cited by counsel, or which has come under observation, for the proposition that a partnership, whose name consists in whole or in part of the name of a person who is not a member of the firm, can, without the consent of the owner, transfer the right to another company or corporation to make a like use of such name. A man might willingly forego the use of his name in favor of an ordinary partnership, which, whether limited or not to a definite term of existence, is liable, upon many contingencies, to come to an end; but from such a grant there could not reasonably be inferred an intention to authorize a transfer or assignment to other companies or corporations, whereby the owner might be perpetually deprived of the control of his own name.

There may be some cases which seem inconsistent with this view, but upon closer consideration it is believed they are not so. The case of *Dixon Crucible Co.* v. *Guggenheim*, 2 Brewst. 321, and the authorities cited, will be found to be instructive. It is doubtless the law, as in that case it is held, that "the property in a trade-mark will pass by assignment, or by operation of law, to any one who takes at the same time the right to manufacture or sell the particular merchandise to which the trade-mark has been attached;" and if one has made of his own name a trade-mark, and then transfers to another his business, in which his name has been so used, the right

to continue such use of the name will doubtless follow the business as often as it may be transferred.

Such was *Bajou's Case*, decided by the *Tribunal of Commerce* of Paris in 1854, cited in 2 Brewst., *supra;* and such are the many cases there cited, and which might be cited, wherein persons have been enjoined against the use of their own names as marks or labels on goods, when the tendency was to injure others in the rightful use of the same or similar names upon like goods. If, for instance, Horton had called his goods "The Horton Corn-planter" and "The Horton Washing-machine," doubtless his vendees and successors in the manufacture, including the complainant, would have been entitled to continue to mark, advertise, and sell the goods by the same name. But this is manifestly very different from the use of the name, as a constituent part of the name of the company or corporation which should manufacture or sell the goods so marked.

The conclusion seems clear that the complainant did not acquire from the Horton Manufacturing Company, the partnership which preceded it, the right to use Horton's name; and as that partnership was dissolved, or at least abandoned, when the corporation was formed, Horton, if he had ever lost, was then remitted to the full control of his name.

The complainant claims further that if it did not in the first instance acquire a right to the use of the name, it did acquire it by long use, and by the acquiescence of Horton in that use to such an extent as to constitute an estoppel against him or any claiming under him.

Conceding that there may be such an estoppel, it is not shown in this instance. Besides the circular published by Horton, as already stated, which implied and indicated, it would seem with sufficient plainness, his dissent from the use of his name by the establishment at Jamestown, it does not appear that Horton had notice or knowledge that the partnership had been abandoned and the complainant corporation formed; and without such knowledge it could hardly be said that there is an estoppel, even if the facts were otherwise sufficient.

The proposition established that the complainant had no right to the name, and has been using the same wrongfully, the conclusion seems necessarily to follow that the respondent, by virtue of Horton's grant, acquired a complete right to the name, and is entitled, on the cross-bill, to an injunction against its use by the complainant.

Decree accordingly.