(Superior Court of Cincinnati.)
Special Term.

## THE GEORGE A. THAYER CARPET CLEANING AND RUG MANUFACTURING COMPANY v. THE GEORGE A. THAYER CO.

A corporation with the consent of one who was a stockholder in the same made his name a part of its corporate name. Subsequently such person having sold his shares of stock in the corporation became a member of another corporation engaged in the same business as the former corporation. The new corporation also adopted the name of such person as part of its corporate name. The names of the two corporations were not entirely identical, but were likely to be mistaken for one another by third persons.

Held, that the corporation which first adopted the name of such private person as a part of its corporate name was entitled to enjoin the latter corporation from using the name of such person either as a part of its corporate name, or otherwise in such a way as to mislead persons desiring to deal with the former corporation into the belief that they were dealing with the latter one.

---

SMITH, J.

From the undisputed evidence in the case there appear the following facts:

The plaintiff company was incorporated under the laws of the state of Ohio on or about September 20th, 1893, the principal stockholders of the company being Joseph F. Kieswetter, who had obtained two letters patent of the United States, one relating to carpet-raveling machines, and the other to looms, both relating to the manufacture of rugs from old carpets or cuttings from new carpets, and George A. Thayer, who had been for some time engaged at the John Shillito Company in the carpet department. The corporation was organized for the purpose of cleaning and laying carpets and the manufacture of rugs from old carpets, and all things incident thereto.

The corporation was run under the management of George A. Thayer up

to August, 1894, when all of the stock-holders sold their stock to Mr. Kies-wetter who subsequently induced Frederick H. Wilms and H. E. Miller (the latter having previously been in the employ of the plaintiff) to pur-chase all the stock, agreeing at the same time to transfer his patents to the company, giving the company the exclusive right to use the invention in the county of Hamilton and the cities of Newport, Dayton and Bellevue in the state of Kentucky.

Wilms and Miller purchased all the stock at the price agreed upon, and Kieswetter transferred to the com-pany, on the 29th day of August, 1894, all the right, title and interest in his inventions for the manufacture of rugs, and agreed not to enter into busi-ness of the same kind that the com-pany had been organized to carry on, either in Hamilton county or the cities of Newport, Dayton and. Belle-vue in the state of Kentucky.

The company, under the manage-ment of Mr. Wilms and Mr. Miller, expended considerable money in re-constructing the machinery, improv-ing the buildings and advertising the business, and, prior to the spring of 1897, had gained such a reputation by their care and attention to business that they had built up a profitable business.

About the spring, or summer, of 1897, Kieswetter, with George A. Thayer and William H. McCaffery, who formerly had been employed by the George A. Thayer Carpet Cleaning & Rug Manufacturing Company, or-ganized a corporation to go into the same general line of business in com-petition with the plaintiff company, giving the new corporation the name of the George A. Thayer Company. Mr. Thayer paid no cash for his stock except by the giving of his promissory note.

The evidence further shows that considerable confusion has arisen from the similarity in name of the two corporations, orders intended for one company being sent to the other.

It is also contended by plaintiff that the defendant in a number of in-stances, although aware that orders sent to it were intended for the plain-tiff, nevertheless has accepted the same and received the money there-for, and evidence tending to sup-port this contention has been intro-duced at the trial; but in view of the law governing the case I do not find it necessary to express any opinion upon this question of fact.

The prayer of the petition is that defendant be restrained from using the name "George A. Thayer" or the name of the "George A. Thayer Co." in the carpet cleaning or rug manufacturing business in Hamilton county or the cities of Newport, Dayton or Bellevue, Kentucky, and for five thousand dol-lars damages.

It seems a startling proposition, at first blush, to declare that one may be enjoined from using his own name, yet the law has become well settled that one will be enjoined fom using his own name if the intention and effect of such use is to appropriate the business of some other person.

The right to thus enjoin is entirely independent of the law of trade marks, and has its basis in the aversion which courts of equity have always mani-fested towards fraud, however varicus and attractive or apparently invulner-able the forms with which it may sur-round itself.

A luminous and exhaustive article in this month's number of the Harv-ard Law Review (Dec. 1898) by Hon. W. L. Putnam, judge of the United States circuit court, entitled "The Deceptive Use of One's Own Name" is the latest contribution on this sub-ject, and by reference to it I incorpor-ate it in this opinion as a discussion of the principles and a collection of the cases governing this case. In this article Judge Putnam says:

"The cardinal principle that any thing which may deceive is prima facie wrongful and should be prevent-ed if possible, is the only safe guide, and it is most encouraging to see that as the commercial value and import-ance of long established business repu-tations and the opportunities for mak-ing unjust gains by fraudulent imita-tions are more clearly recognized, the courts are more and more willing to

grant the needed protection, and show an uncompromising determination to do their part towards maintaining commercial honesty and fair dealing," and that, "it is noticeable that as a rule the more cases of this kind a court has before it, the less hesitation there is in prohibiting any unnecessary similarity. Experience satisfies the judges that such resemblances are not accidental, and they are not inclined to give the wrongdoer the benefit of any doubt there may be as to the success of his design."

Without further reference to the general principles governing this question and without undertaking to trace the development of the law upon this subject, for the limitations upon my time preclude such a discussion, I refer directly to a few cases directly parallel in their essential features to the one at bar. In Hendricks v. Montague, 17 Ch. D., 638, an action was brought by the plaintiff on behalf of the Universal Life Assurance Society to enjoin the incorporation of a company which had organized for the purpose of carrying on a similar business under the name of the Universe Life Assurance Association. In the course of its opinion in which it was declared that the plaintiff was entitled to such relief, the court of appeals, said:

"The plaintiff's name is the 'Universal Life Assurance Society.' Now, is there such a similarity between those names as that the one is in the ordinary course of human affairs likely to be confounded with the other? Are persons likely, who have heard of the Universal, to be misled into going to the Universe? I should think, speaking for myself, very likely indeed. Many people do not care to bear in mind exactly the very letters of everything they have heard of, and we have had a great body of evidence before us of persons whose business it is ·to be acquainted with these life assurance companies, all of whom concur in deposing in the strongest possible terms that nothing is more calculated to injure an old society of this kind than having a new society established which has got a name so similar to that of the other as that it is likely to be mis-

taken for it. They say that likelihood exists in this case: that it is likely, morally certain, in fact, that there will follow the results which they describe. Well, that being so, it seems to me we have everything that is required according to the principles of the court—all the court requires is to be satisfied that the names are so similar as to be calculated to produce confusion between the two companies—so calculated to do it that when it is drawn to the attention of those adopting the name complained of that that would be the result, it is not honest for them to perservere in their intention, though originally the intention might not have been otherwise than honest.

"I think, therefore, these defendants ought not to be permitted to persevere in their intention, now that they know exactly what it is the plaintiffs complain, and reasonably compalin of; that they ought not to be permitted to persevere in their intention of using that name merely because they say — and that is all they do say in their affidavits, that when they formed the intention of using the name Universe in the first instance they had not any idea of stealing the plaintiff's name."

And again, "The question is simply whether the name they have adopted for a business of the same kind and in the same city is so like ·the name of the plaintiffs, which they have used as their trade name for so long a period, as in fact to enable the defendants to appropriate, or to result in the defendants in fact appropriating, a material part of the business of the plaintiffs' company, by misleading people to suppose that they were dealing with plaintiffs when, in fact, they were dealing with the defendants. The question is whether we can come to the conclusion that that will be, in fact, the effect of their using the name which they propose to use, and that must depend, in the first place, not upon whether the names are identical, but upon whether they are so alike that we are of opinion that in truth and in fact it would have that effect. I do not think that judicially we could decide that as a matter of law. It is

a question of fact whether the name is so similar to the other that it would lead to that result in business."

And again, "I will say one word further as to the intent of the defendants. In my opinion it is not necessary that in taking the name they have, there should have been any fraudulent intent; but whether there was a fraudulent intent or not, everybody is responsible for the reasonable consequences, upon facts known to him, of what he is doing. It is hardly possible to suppose Mr. Alexander, if not the persons associated with him, did not know all the facts connected with the adoption of this name Universal Life Assurance Association; and even if they did not, immediately after the first advertisement of the company appeared in the Times, an application was sent to the defendants pointing out the consequences of what they were doing, and therefore, even if they had been unaware of it before, their attention was then called to the fact that those would be the consequences, and it was wrong on the part of the defendants to persist afterwards in the use of the name which they have taken. There is only one other point, viz: Whether the plaintiffs are entitled to the whole of the injunction they ask. It is said there is a statutory right to register. Yes, there is a statutory right, provided the person who is doing it is not, in doing it, violating some other right, or offending against the law. If he is, this court has the most perfect right to stop him from doing so, just as it had a right of stopping him from going to a court of law; though it has no right to prevent a court of law from entertaining his suit."

In the case of Holmes, Booth & Haydens v. The Holmes, Booth & Atwood Manufacturing Co., 37 Conn., 278, the plaintiff corporation had built up a profitable business; subsequently Holmes & Booth, with others, organized the defendant corporation and undertook to engage in business of a similar nature, but were enjoined from doing so under the corporate name assumed, because the similarity of the names of the two companies produced a confusion which the defendants had no right to create. The following citations are directly in point.

"The law having authorized the selection of a name, and having declared the name so selected to be the name of the corporation, we see no reason why the law should not protect the corporation in the use of that name, upon the same principle, and to the same extent, that individuals are protected in the use of trade-marks. Hence it necessarily follows that corporations in the exercise of discretionary powers conferred by the statute, must so exercise them as not to infringe upon the established legal rights of others. But it is contended, conceding that if John Doe and Richard Roe had formed the defendant corporation they would have had no right to use the petitioners' name, that the petitioners, by incorporating into their name the names of some of the principal corporators, have forfeited their right to this protection, for the reason that they could not thereby so absorb the names of Israel Holmes and John C. Booth as to prevent them from imparting the right to use their names to any other corporation or business firm with which they might become connected. We state the claim in this form because, as it seems to us, in this form only has it any application to the present case. We do not wish to be understood as deciding that the respondents may not, in any legitimate way, indicate to the trade that their business has the benefit of the experience, skill and reputation of these gentlemen. But the simple question is, have they a right to do it by a substantial use of the petitioners' name? In answering this question we shall answer that Mr. Holmes and Mr. Booth, in the first instance, had a perfect right to prohibit the use of their names by the petitioners. If so, presumptively at least, they assented to such use. They subscribed to the capital stock with the knowledge, if not upon the condition that the corporation would thus hold out to the world that their skill and experience were involved in the enterprise. The same

consideration may have influenced others to subscribe to the stock originally or to purchase stock subsequently. The value of the stock may have depended upon it. There is involved in the case, therefore, the element of a contract or an estoppel. If these parties allowed the use of their names, thereby receiving, as they might have done, and probably did, a consideration in the enhanced value of their stock, why does not the law imply an agreement that the name shall continue so long as the corporation shall exist. Or, if they, in connection with others, held out to the world, by the use of their names, that the corporation was entitled to the benefit of their skill and experience, what moral, equitable or legal right have they now to withdraw, or otherwise impair, the right to the use of their names?"

And again: "Most of the respondent's corporators were officers, stockholders and employes of the plaintiff corporation. One after another resigned his office or position, and sold out his stock and secretly organized and put in operation a rival company, which bought the entire property of a similar corporation in a neighboring town, and located themselves permanently in the same town with the petitioners, established their depots for the sale of their goods in New York and Boston as near as practicable to the depots of the petitioners, and assumed a name so nearly like that of the petitioners as to induce the belief that the two companies were the same. From these facts the intention to benefit themselves at the expense of injuring the petitioners, so far as such intention is essential, may be legitimately inferred."

In the case of Charles S. Higgins Company v. Higgins Soap Company, 144 N. Y., 462, the plaintiff was a corporation called the "Charles S. Higgins Company", and sought to enjoin the use of the corporate name "Higgins Soap Company" by a corporation organized by Charles S. Higgins, who had been largely interested at one time in the plaintiff corporation, and from whom it had taken its name.

The decision by Andrews, Ch. J., is an excellent discussion of the principle governing such cases and sustains the right of the plaintiff to an injunction. The following citation is particularly pertinent to the question at bar.

"In respect to corporate names the same rule applies as to the names of firms or individuals, and an injunction lies to restrain the simulation and use by one corporation of the name of a prior corporation which tends to create confusion and to enable the latter corporation to obtain, by reason of the similarity of names, the business of the prior one. The courts interfere in these cases, not on the ground that the state may not affix such corporate names as it may elect to the entities it creates, but to prevent fraud, actual or constructive. The names of corporations organized under general laws, and in most other cases, are chosen by the promoters, and it would be an easy way to escape from the obligations which are enforced as between individuals, if a corporation were granted immunity by reason of their corporate character. The principle upon which courts proceed in restraining the simulation of names in the nature of trade-marks that have come to designate the business of a particular person or company, is stated in Lee v. Haley (L. R. 5 Ch. App., 155), an action to restrain the use by the defendants of the name of the Guines Coal Co., in his business. 'I quite agree (said Gifford, L. J.) that they (plaintiffs) have no property in the name (Guines Coal Co.), but the principle upon which the cases on the subject proceed is, not that there is property in the word, but that it is a fraud on a person who has established a trade and carries it on under a given name, that some other person should assume the same name, or the same name with a slight alteration in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name.'

In the case at bar we have not only such a similarity of names as produces confusion in the minds of persons who wish to deal with the one or the other of these companies, but we have the

additional circumstance that the name of Geo. A. Thayer, which the plaintiff is using as part of its corporate name, was given to the corporation by the same George A. Thayer who has undertaken to give his name to the defendant corporation.

Under the facts of this case, in view of the law applicable to questions such as presented by this case, I feel quite clear in holding that the defendant should be enjoined from using the name George A. Thayer as a part of its corporate name in such a way as to mislead persons who intend to deal with plaintiff into dealing with the defendant.

Geo. J. Murray and Charles Phares, for Plaintiff.

Arnold Speiser, for Defendant.