William Rogers Manuf'g Co. *v.* Rogers & Spurr Manuf'g Co.

(*Circuit Court, D. Massachusetts.* April 22, 1882.)

**1. Trade-Mark—Right.**
The right to use a trade-mark is one which depends on use.

**2. Same—Use of Name.**
Any one has a right to the use of his own name in business, but he may be restrained from its use if he uses it in such a way as to appropriate the good-will of a business already established by others of that name; nor can he, by the use of his own name, appropriate the reputation of another by fraud, either actual or constructive.

**3. Same—Enjoining Use of Name.**
Any one who rightfully uses a name of established reputation as part of a trade-mark in a particular business may enjoin its interfering use by others.

In Equity.

*F. Chamberlain* and *O. H. Platt*, for complainants.

*T. W. Clark* and *B. S. Parker*, for defendant.

Lowell, C. J. The plaintiffs allege that one William Rogers, of Hartford, had been a skilful manufacturer of silver-plated ware long before 1865, and had acquired a high and valuable reputation; and in that year a copartnership was formed between one Birch and one Pierce, who agreed with William Rogers that the firm should be called the William Rogers Manufacturing Company, and agreed with him and his son, William Rogers, Jr., that they might adopt and use as trade-marks, " Wm. Rogers & Son," and "1865, Wm. Rogers Mfg. Co.," and that they were so used until 1872, when the present corporation was formed, and bought all the stock, good-will, etc., of the firm; that the two companies, successively, have used these trade-marks, from 1865 to the time of filing the bill, by stamping them upon their goods, and have taken great pains with the manufacture of the plated spoons, forks, and knives which they have put upon the market, and thus their goods have become favorably and extensively known as the "Rogers" and "Rogers & Son" goods, and

are inquired for by these names; that both these names are of great value and distinguishing appellations in the trade, and the spoons, forks, and knives so stamped have acquired and possess a special value; that on or about January 1, 1880, Lorenzo Spurr and George W. Spurr, associated as George W. Spurr & Co., manufacturers of silverware, at Greenfield, knowing the premises, combined and confederated with David C. Rogers and George E. Rogers, a son of said David, to cheat and defraud the complainants by stamping their spoons, forks, and knives with the names, "Rogers" and "Rogers & Son" and "Rogers & Son ◄———— ⸲⸲ Greenfield, Mass.;" and that in February, 1881, the said George W. Spurr, David C. Rogers, and George E. Rogers, with others, formed the defendant corporation, with the intent to make, and that said corporation has made and sold, spoons, forks, and knives stamped Rogers & Son, Greenfield, Mass., (with an arrow;) that those stamps are not distinguished by ordinary purchasers, using ordinary care, from the stamps of the plaintiff company; that they make and sell inferior goods; that they adopted their pretended trade-marks in order to deceive purchasers.

The prayer of the bill is for an account; an injunction against the use of the trade-marks set out in the bill, or any other stamp having the word "Rogers" or "Rogers & Son" as the whole or part thereof upon silver-plated forks, knives, and spoons; and for general relief.

The answer denies all the allegations of the bill as to the plaintiffs' title, and charges that the complainants deceived the public by pictures, advertisements, etc., representing their wares to be the veritable manufacture of William Rogers and William Rogers, Jr.; admits the use of the trade-mark Rogers & Son, (with an arrow,) but denies that it can deceive the public.

The evidence on both sides proves that there were three brothers Rogers in Connecticut, who were honest and skilful silver-platers,— among the first, if not the first, in this country to adopt the electrotyping process; that they failed in business and afterwards severally gave the use of their name, for value, to two or three different companies in Connecticut, and assisted them in the manufacture for a longer or shorter time. These companies are now friendly, as I understand, and have long used trade-marks, three of which still survive, viz., "Rogers Bros.," "Rogers & Bro.," and "Wm. Rogers & Son," with an anchor, which are used by these several manufacturers respectively; the last by the plaintiffs only. The title of the Meriden Company to use one of them was established in *Meriden Britannia Co.* v. *Parker*, 39 Conn. 450.

The firm called the William Rogers Manufacturing Company, predecessors of the plaintiff corporation of the same name, had an arrangement with William Rogers (one of the three brothers) and his son for the use of the name, and William Rogers was a silent partner and had charge of the plating. This connection, which was to have lasted for a long time, was terminated in two years, for reasons not necessary to be considered here. The father and son then advertised and wrote letters and circulars declaring themselves the sole owners to the trade-mark, "Wm. Rogers & Son," and were restrained by the court from continuing such publications and announcements; and the son having violated the injunction was punished. The whole record of this case is in evidence. A part of it is reported in *William Rogers Manuf'g Co.* v. *Rogers*, 38 Conn. 121. Since that time no one has disturbed the plaintiffs in the use of their trade-marks; and for this reason it is immaterial to enter into the merits of that controversy. The right to use a trade-mark is, above all other rights, one which depends upon use.

All those companies whose trade-marks were originally derived from the brothers Rogers have maintained a remarkably good standard of merit in their manufactures, so that all plated spoons, etc., marked "Rogers," or known as "Rogers" goods, command a superior price. The plaintiffs' goods are not known as "anchor," but as "Rogers" and "Rogers & Son" goods.

There is no doubt that George W. Spurr, a silver plater of Greenfield, intended to obtain some of the value of the Rogers name, and that with this object he paid a royalty of five cents a dozen to D. C. Rogers & Son for the use of their trade-mark from August, 1880, to January, 1881; then he organized the defendant company, who agreed to pay D. C. Rogers and E. C. Rogers at the rate of four cents a dozen for 25,000 dozen, for the use of the trade-mark, but would make no final agreement until this suit should be decided. The history of this trade-mark is that D. C. Rogers and George E. Rogers applied in February, 1879, to the patent-office to register under the act of congress a trade-mark consisting of the words "Rogers & Son," with an arrow. In the sworn application or "statement and declaration" required by law they represented themselves as doing business at Greenfield, Massachusetts, under the firm name of Rogers & Son, and declared that they intended to use the trade-mark upon table cutlery, knives, forks, etc. Mr. Grinnell, of Greenfield, whom D. C. Rogers consulted upon the subject, asked him the pertinent ques-

tion whether he intended to use this trade-mark himself or merely to trade upon; and he answered that he intended to use it in the manufacture of goods himself; and the application to the patent-office conforms to this answer. But what the father and son did was to trade upon it; they let it out to George W. Spurr & Co. for a royalty, and afterwards to the defendants for a royalty. This royalty is paid for a falsehood. The names of these Rogerses is not of the slightest value in the silver-plating business, which they never learned or practiced; nor were they ever partners, as I read the evidence, except in hiring out this trade-mark. It is impossible that this royalty can be paid for anything but the chance of purchasers supposing it to represent some other Rogerses. A court of equity cannot be expected to look with much favor upon a trade-mark thus acquired and thus used.

The name of the defendant company was undoubtedly adopted by its originator and chief stockholder, George W. Spurr, with the same purpose. His letters make this clear. If it had been his own business and reputation alone which he intended to preserve and foster, the name would have been Spurr without the ROGERS, or SPURR first and ROGERS afterwards. Speaking for myself only, I should be much inclined to say that the use of such a corporate name might well be enjoined at the suit of those who had given the Rogers name its value, as in *Holmes* v. *Holmes, Booth & Atwood Manuf'g Co.* 37 Conn. 278, for reasons which I shall give presently; but *Gray*, C. J., in *Gilman* v. *Hunnewell*, 122 Mass. 139, 152, has thrown some doubt upon the decision in that case; and in *Massam* v. *Thorley*, L. R. 14 Ch. D. 748, 763, the lords justices, in a case very like the present, refused to enjoin the use of the name entirely, if it could be so used as not to injure the plaintiff.

The defendants insist that the plaintiffs have made false and fraudulent statements to the public, to the effect that they are still manufacturing under the direction and management of William Rogers and William Rogers, Jr. Both parties have fallen into the mistake of supposing that it was important to have a Rogers and his son to authorize them to use the trade-mark Rogers & Son. The law is not so. Any one might use that trade-mark for the first time that it was used, and if there was no Rogers in the same business no Rogers could complain. *Levy* v. *Walker*, L. R. 10 Ch. D. 436; *Massam* v. *Thurley Co.* L. R. 14 Ch. D. 748. It was unnecessary for the plaintiffs to send round pictures of William Rogers and his son, as they have done. Such a method of advertising is more appropriate

to the trade in patent medicines. But I do not quite see the injury to the public in this course of action. I think there is little doubt, upon the facts proved, that the reputation which the goods marked Rogers & Son, and Rogers & Bro., and Rogers Bros. have now acquired, depends upon the conduct of those who now use those names, and not upon any supposition in the minds of the purchasers that the persons who originated the business still conduct it. Under these circumstances it does not seem to me that the plaintiffs have disentitled themselves to relief.

A great deal was said in argument about the natural right of a man to use his own name in any business that he chooses to adopt. This, however, as I have said, is the case of a defendant corporation which has adopted a name to suit its business; and of persons, having the name, who have adopted a trade-mark to let out for hire to other people.

Even if we grant all that has been said about the freedom to use names, (and I grant upon that subject much more than has been argued, for I set no limits to that freedom, excepting interference with acquired rights,) the books are full of cases in which defendants have been restrained from using their own names in a way to appropriate the good-will of a business already established by others of that name. *Croft* v. *Day*, 7 Beav. 84; *Metzler* v. *Wood*, L. R. 8 Ch. D. 606; *Fullwood* v. *Fullwood*, L. R. 9 Ch. D. 176; *Levy* v. *Walker*, L. R. 10 Ch. D. 436; *Massam* v. *Thorley*, L. R. 14 Ch. D. 748; *McLean* v. *Fleming*, 96 U. S. 245; *Devlin* v. *Devlin*, 69 N. Y. 212; *Filkins* v. *Blackman*, 13 Blatchf. 440; *Stonebraker* v. *Stonebraker*, 33 Md. 252; *Shaver* v. *Shaver*, 54 Iowa, 208; [S. C. 6 N. W. Rep. 188;] *Churton* v. *Douglas*, Johns. (Eng.) 174. See 25 Albany Law J. 203.

All these cases in equity depend upon an appropriation by one person of the reputation of another, sometimes actually fraudulent, and sometimes only constructively so.

" It should never be forgotten in these cases that the sole right to restrain anybody from using any name that he likes in the course of any business that he chooses to carry on is a right in the nature of a trade-mark,— that is to say, a man has a right to say, ' You must not use a name, whether fictitious or real; you must not use a description, whether true or not, which is intended to represent, or calculated to represent, to the world that your business is my business, and so, by fraudulent misstatement, deprive me of the profits of the business which would otherwise come to me.' " Per *James*, L. J., *Levy* v. *Walker*, L. R. 10 Ch. D. 447–8.

The reason why artificial trade-marks are absolutely protected, without inquiry into motives, etc., is that the defendant has no nat-

ural right to such a symbol, and has the whole world of nature from which to choose his own: The same principle, in my judgment, applies to corporate names; but here I am met by authorities hesitating to take this ground, as I have said. The defendants insist that there is no sufficient evidence that purchasers would be misled. The purpose being what it was, it would not need a great deal of evidence to prove it successfully accomplished. There is evidence that buyers at retail would be very likely to be deceived.

But the defendants say, again, "Rogers" has become a mere designation of a particular kind of ware, like Thompsonian medicines, or Singer sewing-machines. *Thompson* v. *Winchester*, 19 Pick. 214; *Singer Co.* v. *Larsen*, Cox, Dig. No. 659. But the evidence does not support this defence. The Rogers name does not express a certain sort of goods, but serves as a warranty of good workmanship, because all those persons who have used it have followed faithfully the excellent example of the original Rogerses, who insisted on honest work.

It is further argued that the Rogerses are so many that the court cannot find an intent to appropriate the reputation of one of them more than another; and that, if any suit will lie, it must be by all those who use any trade-mark whose distinctive feature is the name Rogers. I believe it to be true that the Greenfield Rogerses did not inquire, nor did the defendants care, whose reputation they were making available; but I am of opinion that any one of those who rightly uses the name may enjoin its interfering use by others.

Profits stand on a different footing. As at present advised, I should say that the profits made from the name Rogers belong to all those who rightly use it. It is possible, however, that the plaintiffs may be able to prove facts which will give them special profits. They are entitled to, at least, an injunction, costs, and nominal damages, and, if they choose to take the burden of going to a master, I am bound to permit them.

Interlocutory decree for the complainants.