## GINTER v. KINNEY TOBACCO Co. and others.

(Circuit Court, S. D. New York.   July 15, 1882.)

1. TRADE MARK—"STRAIGHT CUT."
    The term "straight cut," as applied to cigarettes, is a term descriptive of the ingredients and character of the article used, and cannot be appropriated as a trade-mark, so as to preclude another from advertising cigarettes made of straight-cut tobacco.

2. SAME—USE OF TERM TENDING TO DECEIVE.
    The use of a term by complainant in a manner calculated to mislead the public in reference to the components or nature of the article to which it is applied, will not be tolerated.

*Wm. D. Shipman,* for complainant.
*Charles B. Meyer,* for defendants.

WALLACE, C. J.   So far as appears upon this motion the term "straight cut," as applied to cigarettes, is a term descriptive of the ingredients and characteristics of the article, and therefore the complainant cannot appropriate it as a trade-mark and enjoin the defendants from advertising their article as "straight-cut cigarettes."

In the preparation of smoking tobacco several different processes of cutting the leaf are employed, and the product is designated by the term which describes the particular process which it has undergone, such as straight cut, curly cut, long cut, and fine cut.   "Straight cut" designates that particular product in which the plant has been so cut and treated at the time of cutting as to preserve the fibers long, even, straight, and parallel when prepared for sale or use.   It is stated also that the choicer varieties of the plant are usually selected by this mode of treatment, and the product is especially desirable for cigarettes.   In view of these facts it is evident that when the term is applied to cigarettes it implies that they are made of straight-cut tobacco.

The complainant advertises his tobacco as straight cut, curly cut, etc., but always adds some further appellation, such as Twin Pet straight cut, Perfection curly cut, etc.   In a circular of May 1, 1881, he states that his "straight-cut tobaccos are cut from the choicest varieties of Virginia gold and sun-cured leaf, and are cut to lie straight in the boxes, and are very desirable for making cigarettes." He now insists that the term was selected and has been employed by his business predecessors and himself as an arbitrary designation of his particular article, and that neither his cigarette nor the defendants' are made of straight-cut tobacco.   All this, if true, does not

help the complainant's case, but to the contrary furnishes an additional reason why he should be denied the assistance of a court of equity. Not only has he employed a name to which he could not acquire an exclusive right, but he has used it in a manner calculated to mislead the public, although, perhaps, not intentionally on his part. A purchaser cognizant of the differences in the preparation of smoking tobacco would legitimately infer that the complainant's cigarettes were in fact made of straight-cut tobacco. No principles are better settled in the law of trade-marks than that a generic term, or a name merely descriptive of the ingredients, quality, or characteristics of an article of trade, cannot be the subject of a trade-mark, and that the use of a name or term which is likely to deceive the public in reference to the components or nature of the article to which it is applied will not be tolerated.

The motion for a preliminary injunction is denied.

See *Burton* v. *Stratton, ante,* 696, and note, 704; *Shaw Stocking Co.* v. *Mack, ante,* 707, and note 717.