INVESTOR PUB. CO. OF MASSACHUSETTS v. DOBINSON et al.

(Circuit Court, S. D. California. February 24, 1896.)

No. 632.

1. EQUITY PLEADING—FORM OF ALLEGATION—GENERAL DEMURRER.
    An allegation of an essential fact in a bill in equity, by way of recital, but in such form that the existence of the fact appears by necessary implication, is good as against a general demurrer.

2. UNFAIR COMPETITION—SIMILAR CORPORATE NAMES.
    Complainant, the Investor Publishing Company, alleged in its bill that it had for many years published a trade journal, called "The United States Investor," which had acquired a high reputation and large circulation in the United States and other countries; that defendant the Investor Pub-

lishing Company of California had begun the publication of a similar paper, called "The Investor," at the head of the editorial column of which it placed the words "Published by the Investor Publishing Company"; and that such acts of the defendant had caused confusion in complainant's business, diverted its trade, and caused damage to it. *Held*, that the bill stated a case for equitable relief.

Wells & Lee, for complainant.
Sheldon Borden, for defendants.

WELLBORN, District Judge.    The bill of complaint, to which defendants have interposed a general demurrer, alleges, in substance, that the plaintiff is a corporation formed and existing under the laws of the state of Massachusetts, and the defendant company a corporation formed and existing under the laws of the state of California; that, for more than five years last past, plaintiff has published, and still publishes, in the city of Boston, state of Massachusetts, and in the city of Philadelphia, state of Pennsylvania, a weekly trade and financial journal, named "United States Investor"; that said paper, under said name, has become widely and favorably known, throughout the United States, Canada, the republic of Mexico, England, the continent of Europe, and Australia, and that plaintiff has also become widely and favorably known throughout said territory; "that defendant the Investor Publishing Company of California, on or about the 14th day of March, 1894, at the city of Los Angeles, state of California, began the publication of a trade and financial journal under the name of 'The Investor,' and the defendant G. A. Dobinson is the editor in chief of said trade and financial journal. And your orator charges that defendants, by adopting the name of 'The Investor' for such paper, and by printing at the head of its editorial column the words 'Published by the Investor Publishing Company, Incorporated,' the same as your orator's corporate name, has thereby diverted the trade belonging to your orator; that this similarity in the names has produced great confusion in plaintiff's business, and is depriving your orator of the benefit of the reputation acquired by the high character and popularity obtained by your orator among investors and advertisers throughout the United States and elsewhere, whereby your orator has been and is greatly damaged.    And your orator further says that he fears, and has reason to fear, that said defendant will continue to use the name and style of 'The Investor Publishing Company,' and will continue to publish the said trade and financial journal under the name of 'The Investor,' and thereby cause irreparable injury to your orator's exclusive right to the corporate name 'The Investor Publishing Company,' and to its exclusive right to the name of 'United States Investor.'"    The bill prays that defendant may be decreed to account for and pay over the income and profits unlawfully derived from the violation of plaintiff's rights, and also for an injunction from the further use of the names "The Investor" and "The Investor Publishing Company," or any imitation thereof.

Under their demurrer, defendants insist that plaintiff has not, by the use shown in the bill, acquired such a right to the word "Investor" as precludes, unqualifiedly, the adoption by defendant of a similar name for a like use, but that before defendant's journal could infringe

plaintiff's rights, not conceding, however, even then, an infringement, it would have to be so advertised or published as to confuse it with plaintiff's, and that the only allegation in the bill to this effect is by way of recital, and not a positive averment, and therefore insufficient. The allegation referred to is the latter part of the following clause: "And your orator charges, that defendants, by adopting the name of 'The Investor' for such paper, and by printing at the head of its editorial column the words 'Published by the Investor Publishing Company, Incorporated,'" etc.

In order to correctly pass upon the question of the sufficiency of this allegation, it is necessary, in the outset, to observe and distinguish the respective offices of a general and special demurrer. "The former will be sufficient (although special causes are usually stated) when the bill is defective in substance. The latter is indispensable when the objection is to the defects of the bill in point of form." Story, Eq. Pl. § 455. Accordingly, it has been expressly held that, where an essential fact appears by necessary implication, such a statement of the fact is good, as against a general demurrer. Amestoy v. Transit Co., 95 Cal. 314, 30 Pac. 550. In that case the court says:

"Respondent states the rule to be that only those allegations of the complaint are admitted by the demurrer which are material and which are well pleaded. As a general proposition that is undoubtedly correct, but it must be taken in connection with the other well-established rules of pleading. A complaint which would be obnoxious to a general demurrer would not support a judgment. When the latter question arises, courts have always discriminated between insufficient facts and an insufficient statement of facts; and where the necessary facts are shown by the complaint to exist, although inaccurately or ambiguously stated, or appearing by necessary implication, the judgment will be sustained. Reason requires that this same rule shall be applied in the case of a general demurrer."

Again, in the text-book above mentioned occurs the following:

"In Baker v. Booker, 6 Price, 381, Baron Wood said: 'A demurrer only admits matters positively alleged in the bill; not every fanciful pretense suggested.' But this proposition must be taken sub modo; for if a fact be not positively asserted, and yet is material, and is stated in terms which may be deemed reasonably certain in their import, the demurrer will admit them." Story, Eq. Pl. § 452, note 3.

Defendants contend, however, that here, as in all other cases, the bill should be most strongly construed against the plaintiff. The general proposition involved in this statement is unquestionably correct, but it is applicable only where the averment in controversy admits of two interpretations, in which case that one least favorable to the pleader is to be adopted. 1 Fost. Fed. Prac. § 106. Such is not the case here. The averment is not susceptible of a double meaning, nor is it obscure. The only objection to it is that it is not direct. This defect, if such it be, is matter of form, and therefore cannot be reached by general demurrer. Whether the allegation would stand, against a special demurrer it is not necessary to determine. All that I now hold is that the allegation is sufficient in the absence of such a demurrer.

Assuming, then, that the bill alleges that the defendant printed, at the head of the editorial column of its journal, "Published by the

Investor Publishing Company, Incorporated," the case made by the bill is substantially as follows: That plaintiff, an incorporated company, has for a number of years published, in the cities of Boston; New York, and Philadelphia, a trade journal called "The United States Investor," and that such journal has become widely and favorably known, throughout the United States and other countries; that, during this period, the defendants, at the city of Los Angeles, Cal., began the publication of a journal called "The Investor," and printed at the head of the editorial column of said journal the words "Published by the Investor Publishing Company, Incorporated"; that these acts of the defendant company have produced great confusion in plaintiff's business, diverted its trade, and deprived it of the benefit of its high character and popularity among investors and advertisers, throughout the United States and elsewhere, and thereby plaintiff has been and is greatly damaged. Do these allegations show such an injury to the plaintiff as a court of equity will redress? is the remaining question to be determined.

That the name of a corporation is an essential part of its being, and that the courts, independent of statutory provision, will protect the corporation in the use of its name, seems to be well settled by the authorities, and the controlling principles in such a case are those applicable to trade-marks. State v. McGrath, 92 Mo. 357, 5 S. W. 29; Farmers' Loan & Trust Co. v. Farmers' Loan & Trust Co. of Kansas (Sup.) 1 N. Y. Supp. 44; Celluloid Manuf'g Co. v. Cellonite Manuf'g Co., 32 Fed. 94; Newby v. Railway Co., Deady, 609, Fed. Cas. No. 10,144; 4 Cent. Law J. pp. 338, 339; 10 Cent. Law J. pp. 82–84, 104–106, 123–126; William Rogers' Manuf'g Co. v. Rogers & Spurr Manuf'g Co., 11 Fed. 495.

In the first of these cases, the court, at page 357, 92 Mo., and page 29, 5 S. W., says:

"The name of a corporation is a necessary element of its existence, and, aside from any statute, the right to its exclusive use will be protected upon the same principle that persons are protected in the use of trade-marks. Boone, Corp. § 32; Newby v. Railway Co., Deady, 609, Fed. Cas. No. 10,144; Ex parte Walker, 1 Tenn. Ch. 97; Holmes, Booth & Haydens v. Holmes, Booth & Atwood Manuf'g Co., 37 Conn. 291. In the case last cited, the name of the corporation first organized was 'Holmes, Booth & Haydens,' and was made up of the names of the principal shareholders. Two of the shareholders, Holmes and Booth, with other persons, thereafter organized another corporation, by the name of 'Holmes, Booth & Atwood Manufacturing Company.' The similarity of the two names resulted in confusion, and it was found as a fact that dealers in the market were liable to be misled into the belief that the corporations were the same. On these facts, it was held the new corporation should be enjoined from using the name adopted. These cases show the rights that arise from the use of a corporate name."

In Newby v. Railway Co., supra, the court says:

"The corporate name of a corporation is a trade-mark from the necessity of the thing, and, upon every consideration of private justice and public policy, deserves the same consideration and protection from a court of equity. Under the law, the corporate name is a necessary element of the corporation's existence. Without it a corporation cannot exist. Any act which produces confusion or uncertainty concerning this name is well calculated to injuriously affect the identity and business of a corporation."

In the case next below cited, the court holds, in substance, that while a corporation cannot, for all purposes, acquire an exclusive right to any English word of general meaning, yet it may acquire a proprietary right in a special use to and for which the word has been, by such corporation, appropriated and employed. In that case the court says:

"As to the first point, it is undoubtedly true, as a general rule, that a word merely descriptive of the article to which it is applied cannot be used as a trade-mark. Everybody has a right to use the common appellatives of the language, and to apply them to the things denoted by them. A dealer in flour cannot adopt the word 'flour' as his trade-mark, and prevent others from applying it to their packages of flour."

And speaking of the word which was there in controversy, namely, "celluloid," the court further says:

"As a common appellative, the public has a right to use the word for all purposes of designating the article or product, except one,—it cannot use it as a trade-mark, or in the way that a trade-mark is used, by applying it to and stamping it upon the articles. The complainant alone can do this, and any other person doing it will infringe the complainant's right. Perhaps the defendant would have a right to advertise that it manufactures celluloid. But this use of the word is very different from using it as a trade-mark stamped upon its goods. It is the latter use which the complainant claims to have an exclusive right in; and if it has such right (which it seems to me it has), then such a use by the defendant of the word 'celluloid' itself, or of any colorable imitation of it, would be an invasion of the complainant's right. * * * The subject is well illustrated by the case of McAndrew v. Bassett, 4 De Gex, J. & S. 380. The plaintiffs produced a new article of liquorice, and stamped the sticks with the word 'Anatolia'; some of the juice from which they were made being brought from Anatolia, in Turkey. The article becoming very popular, the defendants stamped their liquorice sticks with the same word. Being sued for violation of plaintiff's trade-mark, one of their defenses was that no person has a right to adopt as a trade-mark a common word, like the name of a country where the article is produced. Lord Chancellor Westbury said: 'The argument is merely the repetition of the fallacy which I have frequently had occasion to expose. Property in the word for all purposes cannot exist; but property in the word as applied by way of stamp upon a particular vendible, as a stick of liquorice, does exist the moment the article goes into the market so stamped, and there obtains acceptance and reputation, whereby the stamp gets currency as an indication of superior quality, or of some other circumstance which renders the article so stamped acceptable to the public.'" Celluloid Manuf'g Co. v. Cellonite Manuf'g Co., 32 Fed. 98, 99.

At page 100, the court further says:

"The defendant's counsel in the present case placed great reliance on the decision in Leather-Cloth Co. v. American Leather-Cloth Co., 11 H. L. Cas. 523. After carefully reading that case, I do not see that it necessarily governs the present. No question was made as to the names of the companies. The trade-mark was a large circular label stamped upon the cloth, containing, within its circumference, the name of the former company which carried on the manufacture, and the places where it had been carried on, thus: 'Crockett International Leather-Cloth Company, Newark, N. J., U. S. A.; West Ham, Essex, England.' Within the circle were, first, the figure of an eagle, displayed, under the word 'Excelsior,' and then certain announcements in large type, as follows: 'Crockett & Co., Tanned Leather Cloth; patented Jan'y 24, '58. J. R. & C. P. Crockett, Manufacturers.' The court held this label to be partly trade-mark and partly advertisement; and as the cloth was not patented, and J. R. & C. P. Crockett were not the manufacturers, the court was inclined to agree with the lord chancellor that these statements invalidated the label as a trade-mark; but Lords Cranworth and Kingsdown preferred to place their decisions against the plaintiff on the ground that the defend-

ants' label did not infringe it. They pointed out differences in figure, and showed that the announcements were different; and the ·defendants' announcement being 'Leather Cloth Manufactured by Their Manager, Late with J. R. & C. P. Crockett & Co.,' without reference to a patent, Lord Kingsdown said: 'The leather cloth, of which the manufacture was first invented or introduced into the country by the Crocketts, was not the subject of any patent. The defendants had the right to manufacture the same article, and to represent it as the same with the article manufactured by the Crocketts; and, if the article had acquired in the market the name of "Crocketts' Leather Cloth," not as expressing the maker of the particular specimen, but as describing the nature of the article,, by whomsoever made, they had a right in that sense to manufacture Crocketts' leather cloth, and to sell it by that name. On the other hand, they had no right, directly or indirectly, to represent that the. article which they sold was manufactured by the Crocketts, or by any person to whom the Crocketts had assigned their business or their rights. They had no right to do this, either by positive statement, or by adopting the trade-mark of Crockett & Co., or of the plaintiffs, to whom the Crocketts had assigned it, or· by using a trade-mark so nearly resembling° that of the plaintiffs as to be calculated to mislead incautious purchasers.' "

Careful examination of the authorities relied on by defendants satisfies me that they do not conflict with the foregoing cases. In Goodyear's India Rubber Glove Manuf'g Co. v. Goodyear Rubber Co., 128 U. S. 598–604, 9 Sup. Ct. 166, cited by defendants, the ruling of the court was to the effect that names descriptive of a class of goods could not be exclusively appropriated by any one, and this principle they held applicable to the words "Goodyear Rubber," declaring them to be "terms descriptive of well-known classes of goods, produced by the process known as 'Goodyear's invention.'" The opinion of the court further quotes with approval the case of Canal Co. v. Clark, 13 Wall. 311, where it was held "that geographical names, designating districts of country, could not be appropriated exclusively, as they pointed only to the place of production, and not to the producer." " 'Could such phrases,' said the court, 'as "Pennsylvania wheat," "Kentucky hemp," "Virginia tobacco," or "Sea Island Cotton," be protected as trade-marks, could any one prevent all others from using them, or from selling articles produced in the districts they describe under those appellations, it would greatly embarrass trade, and secure exclusive rights to individuals in that which is the common right of many.'" Goodyear's India Rubber Glove Manuf'g Co. v. Goodyear Rubber Co., supra.

Manifestly, the words "Investor" and "Investor Publishing Company" do not fall within either of the above forbidden classes.

The court further points out the principles upon which the owner of a trade-mark is protected in its use, as follows:

" 'The trade-mark must, either by itself or by association, point distinctively to the origin or ownership of the article to which it is applied. The reason of this is that, unless it does, neither can he who first adopted it be injured by any appropriation or imitation of it by others, nor can the public be deceived.' To the same purport is the decision in Manufacturing Co. v. Trainer, 101 U. S. 51. There the court said: 'The object of the trade-mark is to indicate, either by its own meaning or by association, the origin or ownership of the article to which it is applied. If it did not, it would serve no useful purpose, either to the manufacturer or to the public; it would afford no protection to either, against the sale of a spurious in place of the genuine article.' See, also, Manufacturing Co. v. Spear, 2 Sandf. 599;· Falkinburg v. Lucy, 35 Cal. 52; Choynski v. Cohen, 39 Cal. 501; Raggett v. Findlater, L. R. 17 Eq., 29."

While the name "Investor" does not, "by its own meaning," do so, yet, by its "association" with the Investor Publishing Company of Massachusetts, as clearly set forth in the complaint, it does indicate both the origin and ownership of the journal, and therefore falls within the reasoning of the last quotation.

In the next case cited by defendants, that of Richardson & Boynton Co. v. Richardson & Morgan Co. (Sup.) 8 N. Y. Supp., 53, I find nothing against the principles above indicated. There the court simply held, upon the trial of the case, as a matter of fact, that the similarity of names complained of did not work confusion in or damage to the complainant's business. The following extract from the opinion of the court indicates its ruling, and the grounds thereof, viz.:

"In cases of this description, each contains features peculiar to itself, and the right to relief depends rather upon questions of fact than on questions of law. The rule which governs adjudications in respect to questions such as that presented by the case at bar is reasonably plain, and it is distinctly held that such a similarity of names as is likely to produce confusion in the minds of ordinary unsuspecting persons will be restrained. Therefore the question involved in this case is, was there such a similarity of names? We might indulge in speculation in reference to the likelihood of confusion arising from similarity of these names in the conduct of business, and that such similarity was calculated to deceive and impose upon the bublic, and upon the purchasers of goods of the character in which the parties to this action were accustomed to deal. But the most satisfactory evidence in reference to the results likely to follow from alleged similarity is evidence of actual cases in which such deception and imposition has occurred. In the case at bar attempts have been made to show that confusion has arisen from the alleged similarity of names; but it is singularly barren of evidence showing that a single customer has been lost to the plaintiff by reason thereof, or any satisfactory evidence that a single person has been deceived into calling in the one store when he intended to visit the other."

In the case at bar, the bill expressly alleges that confusion, loss of trade, and damage have resulted to plaintiff from the similarity of names.

The decision in Koehler v. Sanders, 122 N. Y. 65, 25 N. E. 235, also cited by the defendants, is to the effect that the firm name of the plaintiffs, who constituted a partnership, under the name of the "International Banking Company," was descriptive of a class of business, and therefore not capable of exclusive appropriation. This case, so far as concerns the point stated, is simply in line with that of Goodyear's India Rubber Glove Manuf'g Co. v. Goodyear Rubber Co., supra. It is further to be noted that in Koehler v. Sanders the defendants, who, like the plaintiffs, were partners, but under a wholly different name, that of Edward Sanders & Co., did not employ the designation objected to by plaintiffs—"International Bank"—in such a way as to confuse their business with that of plaintiffs, but expressly advertised the "International Bank" as that of Edward Sanders & Co.

In the case of Trust Co. v. Nine (Neb.) 43 N. W. 348, also cited by the defendants, the court simply held that "Nebraska," being a geographical name, could not be exclusively appropriated. The decision, therefore, in that case, does not antagonize, but is in harmony with, the principles enunciated in the other foregoing cases.

To the precedents already cited in support of the bill may be added that of Investor Pub. Co. v. Simons, in the circuit court of the United States for the western division of the western district of Missouri, unreported, wherein the court rendered a decree enjoining the defendant from using the words "Investor Publishing Company"; the complainant in said suit being the same company as the complainant herein.

The objection urged in defendants' last brief, that the bill does not show that the defendant corporation was publishing its journal at the time of the institution of the suit, I think, is not well taken. Whether or not the complainant has sufficiently answered this objection by saying that, upon the allegation of the bill, said defendant began the publication of its journal about March 14, 1894, the presumption arises of a continuance of such publication down to the institution of the suit, is unnecessary for me to decide, in the view I take of the matter. An injunction is not the only relief sought for in the bill, but it also prays for an accounting with the defendants. So far as this latter relief is concerned, it does not depend, I apprehend, upon the fact of publication at the time the suit was commenced. The law is well settled that "a demurrer to a bill, for want of equity, will not lie when the complainant is entitled to part of the relief prayed for." Mercantile Trust & Deposit Co. v. Rhode Island Hospital Trust Co., 36 Fed. 863; Merriam v. Publishing Co., 43 Fed. 450.

The demurrer is overruled, and the defendants assigned to answer to the bill at the rule day in April next.