(*Superior Court of Cook County. In Chancery.*)

## New York Dental Parlors

### vs.

### Froon, et al.

(July 6, 1899.)

1. TRADE-MARKS AND TRADE NAMES—DISTINCTION—RIGHT TO EX-CLUSIVE USE OF TRADE NAME..."Trade-mark" and "trade name" are nearly synonymous. There is no exclusive right in a trade name unless such name has the distinguishing qualities of a trade-mark and is used to distinguish the goods, wares and merchandise of the user.

2. TRADE NAME—INFRINGEMENT—NECESSITY OF.—In the absence of fraud, deception or unfair competition, the user of a trade name cannot enjoin its use by others. (See note I—Ed.)

3. TRADE-MARKS—GEOGRAPHICAL NAME. A geographical name or term cannot be protected as an exclusive trade-mark. They must be supplemented by other words which import quality or standard.

4. TRADE-MARKS—MISLEADING NAME. Where complainants use a geographical name which is misleading, the court will not protect such name as a trade-mark. (See note II—Ed.)

---

Bill for injunction to restrain use of name similar to complainant's. Heard before Judge Jesse Holdom.

For statement of facts see opinion.

*Howard Ames,* for complainant.

*James A. Fullenwider,* for defendants, Froon and Simonds.

---

HOLDOM, J.:—

This bill is filed by the complainant, an Illinois corporation, against the defendants to enjoin them from using the name

of complainant or what is alleged to be its trade mark,—which is in fact its corporate name—its form of advertisement, or from using any name or design similar to its name or trade mark, so-called, etc.

Froon and Simonds only have answered, the remaining defendants, (George S. Gagnon, New York Painless Dentists' College, New York Painless Dental Company, Sophia Burton Gagnon), being names assumed by the answering defendants in their business as dentists.

It does not seem to me from the facts in evidence that this is a case warranting the interposition of this court by its writ of injunction. Counsel for complainant bases his claim for relief on the ground that defendants' conduct results in the infringement of complainant's trade name, and attempts to make a legal distinction between it and a trade mark. In this he somewhat fails. "Trade mark" and "trade name" are nearly synonymous, for the mark is the name, and its purpose is to protect the trade in the goods dealt in by the rightful possessor of either the mark or the name. It therefore follows that an infringement mostly arises from the giving out to the public or the trade of some article in the similitude of that protected by the mark or name which deceives and is a fraud not only upon the purchaser, but on the owner of the name or mark. It does not appear that the name of complainant is attached in any way to its wares, viz.: false or artificial as distinguished from genuine or natural teeth, or that it has in any particular way or manner acquired any fame or reputation personal to itself and not equally shared by others in the same line of business.

It nowhere appears that there is any deception working through the methods alleged to be practiced by the defendants which results in an injury to intending patrons of complainant by having their work done at the rival establishments of defendants; neither does it appear that complainant has any established trade built up by reason of any superior merit either of goods or mechanical skill different from that of others engaged in the same line of business.

This case is in no way similar to *Sanders v. Jacobs*, 20

Mo. App. 96, and neither the logic or reasoning of that case applies here. There the name "New York Dental Rooms" was registered under the act of congress as a trade mark, and entirely different rules and principles are applied for its regulation.

I cannot see that *Rubel v. Allegretti*, 76 Ill. App. 581,[1] lends any light by which to solve the questions raised in this case. There Allegretti gave his name to a particular kind of candy, which became popular to the feminine taste, and there was a large demand for it. Rubel, by fraud, deceived the public by palming off his candy for that of the Allegretti brand. This was a fraud alike upon the original manufacturers and the consumer, but in the case at bar naught is shown of any particular merit in complainant's goods, different from that of others, whereby any one patronizing defendants' establishments could in any way be defrauded, even should they be lured there by similarity of the name.

It is well settled legal doctrine that a geographical name or term cannot be protected as an exclusive trade mark. *Columbia Mill Company v. Alcorn*, 150 U. S. 460. They must be supplemented by other words which import at least quality or standard in some commercial article. Neither of the other words in the corporate name of complainant fulfill this essential requirement.

The advertisements in themselves do not constitute a fraud in any way, and certainly not such as will justify awarding an injunction to suppress.

The geographical name of the corporation complainant is misleading, and to that extent a legal fraud, as there is certainly nothing in connection with its business or its wares to make the name "New York" more descriptively applicable than that of Boston or Kankakee.

A case has not been made out entitling complainant to the injunction or other relief prayed, and as the bill is primarily one for an injunction, which is denied, the bill will therefore be dismissed for want of equity.

---

[1] Affirmed 179 Ill. 129.—Ed.

NOTE.

I.

INJUNCTION AGAINST THE USE OF CORPORATE NAMES. In *Newby v. Oregon Central Ry. Co.*, Deady, 609; *S. C.*, Fed. Cas. No. 10,144, the court, in its opinion, said: "The corporate name of a corporation is a trade-mark from the necessity of the thing, and upon every consideration of private justice and public policy deserves the same consideration and protection from a court of equity."

This language was entirely *obiter*, as a reading of the case demonstrates, yet it has been quoted approvingly in the later cases. See *Publishing Co. v. Dobinson*, 72 Fed. 603; Hopkins, Trade-marks (2d ed.) pp. 150, 151. There is, however, endless confusion upon this particular question. In general, courts of equity interfere to restrain infringement of names or trade-marks in two classes of cases: (1) To protect a technical trade-mark or trade name, and (2) to restrain unfair competition, as where one party simulates the marks, signs or labels of another. If, therefore, the corporate name constitutes a technical trade-mark, the court will award it protection irrespective of whether the action of the infringer is fraudulent or intentional or otherwise. Hopkins, Trade-marks (2d ed.) p. 44; *Vitascope Co. v. U. S. Phonograph Co.*, 83 Fed. 30. If, however, a corporate name is applied or used to designate particular goods, or is used in connection with the manufacture or sale of such goods, such name may be protected upon the principles applicable to trade-marks. In this class of cases may be ranged the oft cited cases of *Celluloid Mfg. Co. v. Cellonite Co.* 32 Fed. 94; *Higgins Co. v. Higgins Soap Co.*, 144 N. Y. 462. Whether or not one corporation may restrain another corporation having the same or a similar name as the first corporation from using its name, where the name in question is not used in connection with the sale or manufacture of goods, presents a more difficult question. On the one hand, it has been held that the use of a corporate name similar to that used by another corporation cannot be enjoined if its adoption and use are in good faith and without fraudulent intent. *Saunders v. Sun Life Ass'n Co.*, 1 L. R. Ch. Div. (1894) 537; *Farmers' L. & T. Co. v. Farmers' L. & T. Co.*, 1 N. Y. S. 44; *Investor Pub. Co. v. Dobinson*, 82 Fed. 56; *Hygeia Water Ice Co. v. N. Y. Hygeia Ice Co.*, 140 N. Y. 94; *R. & B. Co. v. R. & M. Co.*, 8 N. Y. S. 52; *The Merchants' Banking Co. v. The Merchants' Joint Stock Bank.* 9 L. R. Ch. Div. 560; *Commercial Advertiser v. Haynes*, 49 N. Y. S. 938; *Borthwick v. Evening Post*, L. R. 37 Ch. Div. 449; *Nebraska Loan & Trust Co. v. Nine*, 43 N. W. 348; *Employers' Co. v. Insurance Co.*, 10 N. Y. S. 845; *Hygeia Water Co. v. Ice Co.*, 45 Atl. 957; *Continental Ins. Co. v. Fire Ass'n*, 101 Fed. 255; *L. & P. L. A. Society v. Assur-*

*ance Co.,* 17 L. J. Ch. 37; *London Assurance v. L. & W. A. Corp. Lim.,* 32 L. J. Ch. 664; *Colonial Co. v. Home Ass'n Co.,* 33 Beav. 548; *Plant Seed Co. v. Michel Plant Seed Co.,* 37 Mo. App. 313. See also 7 Thompson, Corporations, p. 6,946; *Elgin Butter Co. v. Elgin Creamery Co.,* 155 Ill. 127.

In *Saunders v. Sun Life Assurance Co. of Canada,* 1 L. R. Ch. Div. (1894) 537, the defendants were incorporated in Canada under the name of "The Sun Life Assurance Company of Canada," and after carrying on business in Canada for over ten years they opened an office in London. "The Sun Life Assurance Society," which had carried on business in London for over eighty years, brought an action for an injunction to restrain the use of such name. It was held that, in the absence of fraud or dishonesty, the user by the defendant of its own corporate name without abbreviation, addition or other modification involved no misstatement of fact, and could not be restrained by injunction; but that the right of defendant did not extend to the use of the name of "The Sun" or "The Sun Life" without the addition of the words "of Canada."

In *Farmers' Loan & Trust Co. v. Same,* 1 N. Y. S. 44, plaintiff had transacted business in New York under the name of "Farmers' Loan & Trust Company" for over fifty years. Defendant was organized in Kansas in 1885 under the name of "Farmers' Loan & Trust Co. of Kansas." It established an office in New York, and advertised, omitting from its name the words "of Kansas." The court said that the name "Loan & Trust Co." was not an uncommon name as applied to monetary institutions, and that the prefix "Farmers" had been applied to designate similar companies engaged in business in different states (there being evidence that there were no less than seven "Farmers' Loan & Trust Companies" in the United States), and therefore the complainant's name was not such an arbitrary and exclusive designation as would entitle it *per se* to be protected from infringement. The court, however, granted a preliminary injunction restraining defendant from using its name in any other way than in connection with the words "of Kansas."

In *Investor Pub. Co. v. Dobinson,* 82 Fed. 56, it was held that the complainant corporation was not entitled to an injunction restraining another corporation from using the same corporate name, or from publishing a periodical having a name similar to the one published by complainant, where the defendant was incorporated and its paper published in a state distant from complainant and the names were used with distinguishing characteristics which rendered injury to complainant therefrom improbable, in the absence of proof that such injury has actually resulted.

In *Hygeia Water Ice Co. v. N. Y. Hygeia Ice Co.,* 140 N. Y. 94, the plaintiff sought to restrain the defendant from using its corporate name. The plaintiff was incorporated with a capital of $5,000 one

month previous to the defendant, which was capitalized at $300,000. It appeared that the defendant had no knowledge of the existence of the plaintiffs, and also that the word "Hygeia" was in use previous to the incorporation of the plaintiffs as part of the corporate name of a water company. The injunction was refused.

In *Richardson & Boynton Co. v. Richardson & Morgan Co.*, 8 N. Y. S. 52, it was held that the defendant corporation would not be restrained from using the name of the Richardson & Morgan Company on account of confusion arising from its similarity to the name of the plaintiff, the Richardson & Boynton Company, where there is no further evidence of confusion than the fact that correspondence addressed to plaintiff was delivered to defendant, and that in one instance credits were wrongfully posted, and that according to the testimony of a single salesman of plaintiff mistakes occur daily as to plaintiff's locality. The court further said that confusion in addresses was not equivalent to confusion in names.

In *Merchants' Banking Co. v. Merchants' Joint Stock Bank*, 9 Ch. Div. 560, a banking company established in 1879, having offices in Bloomsbury, and intended to deal chiefly with tradesmen in that district, was registered with a name similar to that of a banking company established in 1863, having offices in the city, and dealing principally with wholesale merchants. Held, that since there was no *mala fides* on the part of the new company in adopting the name they had taken, nor a probability of their appropriating the plaintiff's business, the old company was not entitled to an injunction restraining the defendant from using its corporate name.

*A.* A corporation will not be enjoined from using its corporate name because of the fact that it is customary in the trade to refer to it by an abbreviated title, which results in confusing its name with that of another corporation. In this case it was held that the United States Trust Company of New York could not restrain the use of the name "United States Mortgage & Trust Company," even though the company was commonly referred to as "The United States Trust Co." *In re United States Mortgage Co.*, 32 N. Y. S. 11, and cases cited.

*B.* A corporation using its corporate name is exercising a franchise conferred by law. *Boston Rubber Co. v. Same*, 149 Mass. 437; *American Order of S. C. v. Merrill*, 151 Mass. 558; 1 Thompson, Corporations, p. 199.

*C.* Every man has the absolute right to use his own name in his own business, provided he does not resort to artifice or contrivance for the purpose of producing the impression that his goods are those of another. *Meneely v. Meneely*, 62 N. Y. 427, and cases cited. And this rule should apply with equal force to corporations. *Elgin Butter Co. v. Elgin Creamery Co.*, 155 Ill. 127; *Celluloid Mfg. Co. v. Cellonite Co.*, 32 Fed. 94.

30

*D.* On the other hand, it has been held that a court of equity will protect a corporation in the use of its name upon the principle applicable to trade-marks. *American Clay Mfg. Co. v. Same,* 198 Pa. 189; *Celluloid Mfg. Co. v. Cellonite Mfg. Co.,* 32 Fed. 94; *State v. McGrath,* 92 Mo. 355; *Newby v. Railroad Co.,* Fed. Cas. No. 10,144, *S. C.,* Deady, 609; *Rogers v. Rogers,* 11 Fed. 495; *Investor Pub. Co. v. Dobinson,* 72 Fed. 603; *Ex parte Walker,* 1 Tenn. Ch. 97; *American Grocer v. Grocer,* 25 Hun, 398; 1 Thompson, Corporations, secs. 296–299; 7 Thompson, Corporations, sec. 8192; *Higgins v. Higgins,* 144 N. Y. 462; *Brewery Co. v. Same,* App. Cas. (1899) 83; *Roy v. Roy,* 58 N. Y. S. 979; *Brooklyn White Lead Co. v. Masury Co.,* Cox, Trade-mark Cases, 210, 25 Barb. 416; *Philadelphia Trust Co. v. Same,* 123 Fed. 534; *Holmes v. Holmes,* 37 Conn. 278. And see full list of cases cited in brief of counsel in *International Trust Co. v. International Loan & Trust Co.,* 10 L. R. A. 758. In a number of the above cases there was evidence of unfair competition.

But to warrant such relief, the necessary facts must be established by very satisfactory proof. When the conduct complained of is that merely of a fair competitor in the same line of business, and the name assumed is not likely to mislead ordinary purchasers, a court of equity will not interfere. *Plant Seed Co. v. Michel Plant Seed Co.,* 37 Mo. App. 313.

In *Block v. Standard D. & D. Co.* (C. C. S. D. Ohio, W. D.) 95 Fed. 978, it was held on demurrer that a bill which alleged that complainant and defendant were competitors in the same line of business; that defendant had assumed a corporate name similar to complainant's trade name, and the public had been deceived thereby, and great confusion and injury had resulted to complainant's business therefrom; that defendant's incorporators, before it was organized, knew of the existence and character of complainant's business and the trade name under which it had for a number of years been conducted, and that defendants had refused, on complainant's request, to desist from the use of the name, states a cause of action against defendant for unfair competition. The above case was thereafter submitted on final hearing and is still under advisement by Judge Thompson.

THE ILLINOIS RULE. The courts of Illinois have several times had the question under discussion.

In *Elgin Butter Co. v. Elgin Creamery Co.,* 155 Ill. 127, the butter company filed a bill to restrain the creamery company from using its name. Both concerns were engaged in the same business. The court held that there was not sufficient similarity between the two names to deceive purchasers, and that even if the names of the two corporations were somewhat similar, yet, in the absence of any intent, act or artifice to mislead dealers in the market or the public

at large as to the identity of the two corporations, each had the equal right to use its own name in its own business.

In *Chicago Landlord's.Protective Bureau v. Koebel*, 112 Ill. App. 21, the plaintiff corporation sued to restrain the defendant from using a name similar to the plaintiff's corporate name. The court held that the imitation of a corporate name by others in a like business, in a manner calculated to deceive the public, will be restrained by injunction. It was also held that it was immaterial that the intention of the defendant in adopting the imitation name was not fraudulent or wrongful, and that it was no defense that at the time of the adoption of such name the defendant was ignorant of the plaintiff's existence. Reliance was placed on *Newby v. Railroad Co.*, Deady, 609, *supra*. The decision of the court is based upon the principle of the trade-mark cases, and irrespective of the principles of unfair trade. The decision of the appellate court was affirmed in 210 Ill. 176.

In the recent case of *People ex rel. v. Rose*, 219 Ill. 46, it was held that the United States Express Co. had the right to enjoin the use of its name as a trade name by other parties, whose intention is to deceive the public and thereby to fraudulently obtain business intended for the former company. An attempt was made to compel the issuance of a charter in the name of United States Express Co., but unsuccessfully. See also *Allegretti v. Chocolate Cream Co.*, 177 Ill. 129; *Hazelton Co. v. Tripod Co.*, 142 Ill. 494; *Int. Comm. v. Y. W. C. A.*, 194 Ill. 194; Hopkins, Trade-marks (2d ed.) p. 150.

In this connection it may be noted that the Act of May 16, 1905 (Sess. L. of Ill. 1905, p. 130), in reference to the organization of corporations, provides that "no license shall be issued to two companies having the same or a similar name, nor shall any foreign corporation having the same or a similar name as any domestic corporation be admitted to this state under any foreign corporation law."

Although the question is not entirely free from doubt, the rule in Illinois probably is that the mere identity of names, with proof that their use leads or tends to lead to confusion in the minds of the purchasing public is sufficient to obtain relief. The case of *Koebel v. Landlords' Protective Bureau, supra*, goes a long way toward establishing that proposition. True, in that case, although the evidence was conflicting, there was some evidence of a fraudulent purpose, and the language of the court should perhaps be read in that connection. If the two companies are engaged in an entirely different business, there can be no attempt to sell the goods of one company as the goods of the other, and therefore no relief could be had. But if the business of the two corporations is the same, and the identity of names results in confusion and induces

the public to believe that the business of the one company is the same as the other, if there is some evidence of fraud, either actual or constructive, relief should and probably would be granted.

In some cases the mere adoption of the name of another corporation by a corporation engaged in the same line of business would be sufficient to obtain relief, as, for instance, if the name of the former corporation was well and favorably known to the public at large. Such a case is *Philadelphia Trust Co. v. Same*, 123 Fed. 534.

## II.

THERE CAN BE NO VALID TRADE-MARK IN A NAME WHICH DECEIVES THE PUBLIC, OR WHICH FALSELY STATES THAT THE GOODS ARE MADE OR PRODUCED IN A PARTICULAR PLACE. The leading case is *Manhattan Medicine Co. v. Wood*, 108 U. S. 218. There Moses Atwood originated and made, at Georgetown, Mass., a proprietary medicine called "Atwood's Vegetable Physical Jaundice Bitters," and complainant, by assignments, acquired the formula and right to the name, and made the article at New York after Atwood's death, using bottles and labels of the same style containing the words, "Atwood's Genuine Physical Jaundice Bitters, Georgetown, Mass." and made by "Moses Atwood, Georgetown, Mass." On suit for an injunction against the infringer the relief was refused, on account of the misrepresentations. The court relied on *The Leather Cloth Company (Limited) v. The American Leather Cloth Company (Limited)*, 4 De G., J. & S. 137, 11 H. L. Cas. 523.

In *Palmer v. Harris*, 60 Pa. St. 156, protection was sought against an exact counterpart of a trade-mark in the words "Golden Crown" for cigars. Relief was denied for the reason that the label falsely represented that the goods were manufactured in Havana, when in fact they were made in New York.

In *Bolander v. Peterson*, 35 Ill. App. 551; *S. C.*, 136 Ill. 215, protection was denied to the name "Svenska Snus Magasinet," meaning "Swedish Snuff Magazine;" for the reason that the goods were actually made in Chicago.

In *American Cereal Co. v. Eli Pettijohn Co.*, 72 Fed. 903 (affirmed, 76 Fed. 372), the complainant, as purchaser and assignee of the business, sought an injunction to restrain an infringement, after it had ceased to manufacture the article at the original mill. The injunction was denied.

In *Coleman v. Dannenberg Co.* (Ga.) 30 S. E. 639, the complainant sought to protect the words "Old Colony Shoe Company, Rockland, Mass.," used upon shoes sold by complainant, but made in Boston, Mass., by the Commonwealth Shoe & Leather Company. The injunction was denied, although the reproduction was exact. To the same effect see:

*Newman v. Pinto,* 57 L. T. (N. S.) 31, 4 R. P. C. 508; *Wrisley Co. v. Iowa Soap Co.,* 104 Fed. 548; *Hobbs v. Francais,* 19 How. Pr. 567, R. Cox, 287, 290; *Krauss v. Peebles* 58 Fed. 585, 595; *Prince Co. v. Prince Co.,* 135 N. Y. 24, 31 N. E. 990; *Stachelberg v. Ponce,* 23 Fed. 430; *Partridge v. Menck,* 1 How. App. Cas. 547; *Parlett v. Guggenheimer,* 10 Atl. 81, 67 Md. 542; *Royal Baking Powder Co. v. Raymond,* 70 Fed. 376; *Connell v. Reed,* 128 Mass. 477; *Joseph v. Macowsky,* 96 Cal. 518, 31 Pac. 914; *Kenny v. Gillet,* 70 Md. 574, 17 Atl. 499; *Heyde v. Wittkowsky,* 5 N. S. Wales, L. R. (E) 75; *Labott v. Trester,* 7 Rev. Legale, 386, 2 St. Dig. 725; *Candee v. Deere* 54 Ill. 439; *Siegert v. Abbott,* 61 Md. 276, 48 Am. Rep. 401; *Pepper v. Labrot,* 8 Fed. 29, 39; *Millbrae Co. v. Taylor* (Cal.) 37 Pac. 235; *Pillsbury Co. v. Eagle,* 86 Fed. 608; *Wilson v. Needermann,* 19 Week. L. B. 268; *Hilson v. Foster,* 80 Fed. 896; *Wood v. Lambert,* 32 Ch. Div. 247; *Solis Cigar Co. v. Pozo,* 16 Colo. 388, 26 Pac. 556; *California Fig Syrup Co. v. Stearns,* 67 Fed. 1008, 73 Fed. 812; *Ginter v. Kinney,* 12 Fed. 782; *Laird v. Wilder,* 9 Bush. 131, 15 Am. Rep. 707; *Wood v. Lambert,* L. R. 32 Ch. Div. 247, 3 R. P. C. 81; *Wolfe v. Burke,* 56 N. Y. 115. But see *The Fair v. Morales,* 82 Ill. App. 499.

*A.* There can be no property in a name as a trade name where the name is a misrepresentation or is calculated to deceive, as where a copartnership uses a name which imports that it is a corporation. *McNair v. Cleave,* 31 Leg. Int. 212, 10 Phila. 155; *Clarke v. Ætna Iron Works,* 44 Ill. App. 510; Brown, Trade-marks, p. 502; Price & Stewart, Trade-mark Cases, p. 6; *Seabury v. Grosvenor,* 14 Blatchf. 262; *Cotton v. Gillard,* 44 L. J. Ch. 90; *Bradley Fertilizer Co. v. South Pub. Co.,* 23 N. Y. S. 675; *Hazelton v. Hazelton,* 30 N. E. 339; *Koehler v. Sanders,* 25 N. E. 235; *Crossley v. Dunn,* 15 L. R. App. Cas. 252; *Kohler v. Beeshore,* 59 Fed. 572.

*B.* THE EXTENT OF THE DECEPTION. The presence of the word "Copyrighted" on a label, when in fact it had not been copyrighted, is not such a misrepresentation as would prevent the owner receiving protection against a pirate. *Solis Cigar Co. v. Pozo* (Colo.) 26 Pac. 556.

Fraud, such as to disentitle a plaintiff to relief against unfair competition in his business, cannot be predicated on statements which, owing to the brevity required by the limited space of a label, are not minutely accurate. *Clark Thread Co. v. Armitage,* 67 Fed. 896.

Where the words in a label adopted as a trade-mark are substantially true and contain nothing calculated to deceive the public, that they are not literally true will not deprive the merchant of the protection of the law. *Conrad v. Brewing Company,* 8 Mo. App. 278.

Statements contained in labels, which are not entirely accurate,

but are entirely immaterial, are not such false representations as will disentitle a manufacturer to restrain an infringement. *Tarrant v. Hoff*, 22 C. C. A. 644; *S. C.*, 76 Fed. 959.

Courts of equity will not protect trade-marks which deceive the public; but that deception need not be of such a character as to work a positive injury to purchasers, nor, on the other hand, will the mere fact that some wrong impression may be received by the public be sufficient to destroy the validity of the trade-mark. If the representation of the trade-mark does not in fact mislead the public, and may be understood in any reasonable sense as substantially true, the trade-mark will be entitled to protection. *Meriden Britannia Co. v. Parker*, 39 Conn. 450.

If a trade-mark, or the label bearing it, untruly and fraudulently represents an article as protected by a patent, it is *prima facie* the misrepresentation of an important fact and the owner of the trade-mark is generally for that cause disentitled to equitable relief against a pirate. Brown, Trade-marks, sec. 72; Cox Manual of Trade-mark Cases, Nos. 116, 142, 223, 267, 288, 304, 342, 384, 444 and 528; *N. Y. Con. Card Co. v. U. P. C. Co.*, 39 Hun, 611; *Cheavin v. Walker*, L. R. 5 Ch. Div. 850; *Nixey v. Roffey*, W. N. (1870) 227.

A fraudulent intention or a tendency to mislead is essential. The untrue use of the word "patent," or an equivalent expression, does not necessarily disentitle to relief. If a fraudulent intention does not exist, and the use of the word may be explained in any reasonable sense consistent with truth and honesty, the plaintiff will not be prejudiced. Brown, Trade-marks, p. 88; *Oil Tank Co. v. Scott*, 33 La. Ann. 946.

If the patent has expired and the plaintiff continues the use of the word "patent," he is not prevented from restraining defendants from so doing. *Edelstein v. Vick*, R. Cox, 119.

One who has fraudulently imitated the trade-mark of another and offered for sale his own goods as those of the owner of the trade-mark cannot be heard to raise the objection that the latter's goods are injurious to health. *Curtis v. Bryan*, 2 Daly (N. Y.) 312.

An injunction *pendente lite* will be refused where plaintiffs mislead the public by falsely claiming that the form of their cakes of soap on which the label was used and the title in the label were secured by a trade-mark. *Brown v. Doscher*, 20 N. Y. S. 900.—Ed.